## No. 8775.

### SCHOOL DISTRICT No. 9, MESA CO. *v.* GIGAX, ET AL.

Decided January 7, 1918.

Action by teachers against a school board for breach of contract. Judgment for plaintiffs.
*Affirmed.*

1. SCHOOLS—*Teaching Contract.* A teacher's contract with a school board, the execution of which begins after the expiration of the term of office of one of the members, is not invalid for that reason, and the board will be liable for a breach thereof.

*Error to the District Court of Mesa County, Hon. Thomas J. Black, Judge.*

Messrs. GRIFFITH, WATSON & SMITH, for plaintiff in error.

Mr. GEORGE BULLOCK, Mr. R. H. WALKER, for defendants in error.

*En banc.*

MR. JUSTICE SCOTT delivered the opinion of the court.

THE plaintiff in error is a school district of the third class as classified by the statutes of the state. As such, its board of directors consists of three members, one of whom is to be elected at the annual school meeting, and each of whom hold office for a term of three years.

At a regularly called meeting of the board of directors of defendant school district, held on the 14th day of March, 1913, the defendants in error, plaintiffs below, and who are husband and wife, were jointly employed to teach the schools of the district for a period of eight months, beginning in September, 1913, at the joint compensation of $155.00 per month. At this board meeting one member of the board opposed such employment. Afterward and at the annual school meeting in May, a new member of the board was elected to succeed one of those who had voted for such employment, and at a later meeting held in the same month, the board, by a vote of two to one, ordered the contract of employment cancelled, and so notified the plaintiffs.

This suit is to recover under the contract of employment. The case was tried to the court upon the pleadings, and judgment rendered in favor of the plaintiffs in the sum of $550.00 being for the amount agreed in the contract of employment, less the earnings of plaintiffs during the period, and necessary expenses to which they were put in obtaining such employment. The pleadings admit that plaintiffs were competent school teachers and were at all times mentioned, authorized by proper certificates to teach school.

It was alleged in the answer of defendant district, that plaintiffs were at the time of the contract, and had been for two school years, employed as school teachers for the school district, and were unsatisfactory, and that this constituted the issue in the ensuing annual election. Fraud is not charged, although the answer alleged that the action was taken by a majority of the board to forestall any action of the board after the election.

The whole question is whether or not the district board had the power to make the contract at the time; the contention being that the board cannot contract for an employment to begin after the expiration of the term of one of the members of the board. This question was raised by demurrer to the complaint and otherwise.

The plaintiff in error to sustain its contention cites the following cases: *Stevenson v. School Dist.*, 87 Ill. 255; *Cross v. School Directors*, 24 Ill. App. 191; *Webster v. School Dist.*, 16 Wis. 336; *Hemingway v. School Dist.*, 118 Wis. 294, 95 N. W. 116; *Burkhead v. School Dist.*, 107 Ia. 29, 77 N. W. 491; *Smith v. School Dist.*, 1 Pennewill (Del.), 401, 42 Atl. 368.

It must be admitted that the Illinois cases do sustain the contention of plaintiff in error, but it is quite clear as pointed out in many of the cases hereinafter cited, that these cases are based on specific statutes of that state, non-existent in this state and in other states, where the contrary view has been taken. One of the provisions of the statute of Illinois upon which that court based its conclusion was as follows:

"Every school established under the provisions of this act, shall be for the instruction in the branches of education prescribed in the qualifications for teachers and in such other branches, including vocal music and drawing, as the directors or the voters of the district, at the annual election of directors, may prescribe."

And from this the court reasoned that:

"Under this provision it could not be known, until after the annual election of directors, but that the voters of the

district would prescribe, that certain branches should be taught beyond those ordinarily taught in district schools and there can, obviously, be no intelligent employment of a teacher until it shall be known what is required to be taught."

The remaining authorities cited by plaintiff in error cannot be said to support the contention. *Hemmingway v. School Dist., supra,* following *Webster v. School Dist., supra,* by the same court, sustained the validity of the contract in question subject only to the power of the district at its next meeting, or of the new board, to terminate the contract by an inconsistent determination as to the length of the term, the sex of the teacher, or the application of the school moneys. Under our statutes the school meeting has no such powers, but such matters are within the exclusive power of the board.

In *Burkhead v. School Dist., supra,* it was simply held that the school board was without power under the statutes of that state to contract with teachers for a period of five years. This was held to be an unreasonable length of time.

In *Smith v. School Dist., supra,* the contract was held to be invalid for the reason that the contract was made with individual members of the board and not made nor ratified by the board at a meeting duly convened. It is true that the writer of the opinion deprecates the policy of out going members in selecting teachers for a period beyond the terms of such members, though expressly declining to lay down any fixed rule upon this point. As we view it the question here is one of power and not of policy. But the following authorities are clearly opposed to the contentions of plaintiff in error, and expressly hold that in the absence of statutes, logically or expressly to the contrary, contracts of the kind under consideration, are binding on the school district. *Caldwell v. School Dist.,* 55 Fed. 372; *Reubelt v. School Dist.,* 106 Ind. 478, 7 N. E. 206; *Taylor v. School Dist.,* 16 Wash. 365, 47 Pac. 758; *Gates v. School Dist.,* 53 Ark. 468, 14 S. W. 656, 10 L. R. A. 186; *Norton v. Wilkes,* 93 Minn. 411, 101 N. W. 619; *Wait v. Ray,* 67 N. Y. 36;

*Splaine v. School Dist.,* 20 Wash. 74; *Town of Pearsall v. Woolls,* 50 S. W. (Tex.) 959; *Wheeler v. Burke,* 162 Ky. 143, 172 S. W. 91.

In *Wait v. Ray, supra,* involving the precise question, it was said:

"And it would be a strange construction of the statute which would terminate the teacher's contract with every such termination of the trustee's office. The power to employ teachers is, therefore, very wisely made general; and a contract for one year or more, if made in good faith, and without fraudulent collusion, must be held binding. This power, like every other power confided to public officers, may be abused, but the fact that it may be abused furnishes no argument against its existence. The danger of abuse is, however, very small, as a hiring for an unusual time would be strong evidence of fraud and collusion. * * *

The contention of the defendant would be more plausible if there were a general rule that public officers could make contracts to continue only during their terms of office, but there is no such general rule; and as to officers who have general powers to contract, unless there is some limitation of their power, their contracts may extend beyond their terms and bind their successors. The public exigencies demand that public officers should be clothed with such power, and protection against its abuse is found in official integrity, which is the rule rather than the exception, and also in the fact that contracts, the offspring of fraud or collusion, may be safely repudiated."

In discussing the same question it was held by the Supreme Court of the State of Washington, *Taylor v. School Dist., supra:*

"The district school board is a corporation representing the district. It is a continuous body. While the personnel of its membership changes, the corporation continues unchanged. It has power to contract. Its contracts are the contracts of the board, and not of its individual members. An essential characteristic of a valid contract is that it is mutually binding upon both the parties to it. A

contract by a school board the duration of which extends beyond the term of service of one of its members is not therefore invalid for that reason."

The cases cited by appellant, *Stevenson v. School Directors,* 87 Ill. 255, and *Davis v. School Directors,* 92 Ill. 293, discuss the statutes of Illinois creating school boards and lay stress upon provisions in those laws which are not contained in the laws of Washington."

The Supreme Court of Arkansas in *Gates v. School Dist., supra,* after distinguishing the Illinois cases, declares:

"It is contended that the selection of superintendents during each year should be left to the exclusive control of the board for that year. As a matter of policy, an argument might be made upon either side of that contention. There is nothing in the law to sustain the affirmative. Public interest might suffer from unwise contracts covering an extended term in future; they might suffer equally for want of power to make a contract when a good opportunity offered. But with the question of policy we have no concern, except in so far as it aids in ascertaining legislative intent. There is nothing in the act that implies that the legislature intended either more or less than it said. We therefore conclude that the act furnishes an accurate expression of legislative intent, and that there is no law that forbids the school board to make a contract for a superintendent for a term beginning after some members of the board go out of office. This conclusion is sustained by the weight of authority as well as by reason. *Reubelt v. Noblesville,* 106 Ind. 480 [7 N. E. 206] ; *Wait v. Ray,* 67 N. Y. 38; *Tappan v. School Dist.,* 44 Mich. 500 [7 N. W. 73] ; *Webster v. School Dist.,* 16 Wis. 337."

Enough has been said to indicate the general trend of judicial opinion upon the subject as appears from the authorities cited, and to indicate the line of reasoning. This court in the case of *School Dist. v. Hale,* 15 Colo. 367, 25 Pac. 308, in passing upon a similar contract of employment under our statutes, not now changed in that respect, said;

"In the statute relating to schools, the board of directors is given full power to do whatever may be necessary for the due and regular management of the schools of their district. This in terms includes the hiring and discharge of teachers. This power, however, must always be exercised in obedience to the general principles of law governing contracts of this class, unless there be some specific restriction in the statute which prevents their application. There is nothing whatever in the statute which gives the board the right to make a contract for a specific term, at a specified price, which shall not be subject to the legal consequences of a breach. The power of employment and discharge is not in terms beyond the control of the general law. It was always true that where a contract of hiring was entered into between two parties for a fixed period at a definite price, the employer could not escape liability for a discharge without cause. If the contract was broken by the employer, a cause of action at once arose in favor of the one discharged, who might, upon the expiration of the period of hiring, recover the damages resulting from the breach."

It will be noted that under our statutes, school boards in districts of the third class have the following exclusive powers, Sec. 5925, Rev. Stat. 1908:

"First. To employ or discharge teachers, mechanics and laborers, and to fix and order paid their wages * * *.

Second. To enforce the rules and general regulations of the state superintendent, to fix the course of study, the exercises and the kind of text books to be used; * * *.

Third. To provide for school furniture and for everything needed in the school house, or for the use of the school board.

Fourth. To rent, repair and insure school houses.

Sixth. To hold in trust for their district all real or personal property for the benefit of the school thereof.

Seventh. To suspend or expel pupils from school, * * *.

Eighth. To determine the number of teachers that shall be employed and length of time over and above three (3) months that the schools shall be kept; to fix the time for the opening or closing of schools, and for the dismissal of primary pupils  *  *  *."

It is quite clear that to deny the validity of the contract in question is to repudiate both the language and intent of the legislature. It may be that the policy of the legislature is not a wise one but that is not a question for the courts.

It is urged by counsel that because the legislature has conferred the power upon the electors of the district to fix the levy for school purposes, that this must be construed as a limitation upon the power to employ teachers until after such levy has been made. This is not tenable. The board has the sole power to employ teachers, fix the number, the wage, and determine the time of employment. It might as readily be said that the board cannot purchase fuel, furniture, or make repairs, the extent of all of which in the very nature of things, must always remain uncertain and indeterminate.

No case has been cited and we know of none, where under statutes like or similar to ours, such powers have been vested exclusively in the school board, a contract has been held invalid for the reason assigned.

The judgment is affirmed.