GLADYS E. TATE v. SCHOOL DISTRICT No. 11 OF GENTRY COUNTY, Appellant.—23 S. W. (2d) 1013.

Division One, February 3, 1930.

478

*A. F. Harvey* and *J. W. McKnight* for appellant.

480

*E. G.* and *J. J. Robison* for respondent.

SEDDON, C.—Plaintiff, a school teacher, commenced this action in the Circuit Court of Gentry County on July 30, 1926, to recover of, and from, the defendant, a common school district in Gentry County, the sum of $720 claimed to be due and owing to plaintiff under the terms of an alleged written contract, dated December 18, 1924, whereby the plaintiff agreed to teach the public school of defendant school district for a term of eight months, commencing on the third day of August, 1925, for the sum of $90 per month, payable monthly, and whereby the defendant school district agreed to issue warrants upon the township treasurer in favor of plaintiff for the amount of wages due plaintiff under said contract. The cause was tried to a jury, resulting in a unanimous verdict in favor of plaintiff in the sum of $720, and judgment was entered in accordance with the verdict. After unsuccessful motions for a new trial and in arrest of judgment, the defendant school district was allowed an appeal to this court. This court retains jurisdiction of the appeal because the cause involves the construction of certain sections of the Constitution of this State, the constitutional questions having been raised by defendant's answer, and the adverse rulings of the trial court upon such constitutional questions having been preserved in defendant's motion for a new trial and by the bill of exceptions filed in the circuit court.

The petition pleads the making of the written contract, on December 18, 1924, by and between plaintiff and defendant, and sets

out the written contract *verbatim,* and alleges that plaintiff was at all times ready, able and willing to perform said contract on her part, but that defendant breached and repudiated said contract, closed the doors of its schoolhouse against the plaintiff, and hired another teacher for the school term and put such other teacher in possession of the schoolhouse, thereby preventing plaintiff from performing said contract on her part.

The defendant demurred to the petition upon the grounds: (1) that the petition does not state facts sufficient to constitute a cause of action; (2) that it is apparent upon the face of the petition that the board of directors of defendant school district was without power or authority to employ a teacher on December 18, 1924, to teach during the school term commencing on August 3, 1925; and (3) that it is apparent upon the face of the petition that the contract sued upon is void. The demurrer to the petition was overruled by the trial court, whereupon the defendant answered the petition.

The answer denies generally the allegations of the petition, and avers, in substance, that the alleged contract of December 18, 1924, is null and void, and in violation of the statutory law and public policy of the State, in that the board of directors of defendant school district had no lawful right, power or authority to employ plaintiff, in December, 1924, to teach a term of school commencing in the next succeeding school year; that a majority of the members of the board of directors of defendant school district, in order to forestall applications from other teachers to teach the district school for a term commencing in the fall of 1925, and in order to prevent competition from other teachers as to service and compensation in teaching said district school for the term commencing in the fall of 1925, did wrongfully, unlawfully and fraudulently conspire and confederate together, and with the plaintiff, in the making of the alleged contract of employment; that the alleged employment of plaintiff was void and in violation of Section 3 of the act of the General Assembly approved on April 8, 1921, and contained in Laws of Missouri, 1921, pages 641-643, for the reason that plaintiff had not furnished a health certificate, as required by Section 3 of said act; that the alleged contract of employment is illegal and void for the reason that the alleged employment of plaintiff was not had and done at any proper or lawful meeting of the board of directors of defendant school district, or by any order of said board entered upon the minute book, or official records, of said board; that the rate of taxation and the amount of revenue available to pay plaintiff's salary had not been determined at the time of the alleged employment of plaintiff, and that the indebtedness purporting to have been created by the alleged contract of employment is in violation of Sections 11 and 12 of Article 10 of the Constitution of Missouri;

that, at the time of the alleged employment, plaintiff had not received, and had not filed with the clerk of the defendant school district, a certificate of qualification, authorizing plaintiff to teach in a public school of Gentry County for the full period of time for which the alleged contract is purported to have been made; and that numerous complaints by patrons and taxpayers of the school district had been made to the board of directors of defendant school district respecting the unsatisfactory services rendered by plaintiff as a school teacher prior to the date of the alleged contract of employment, but that a majority of the board of directors of defendant school district, with knowledge of such complaints, had arbitrarily, wrongfully and fraudulently undertaken to retain the plaintiff as a teacher of the district school, and had purported to enter into the alleged contract of employment, all of which actions are alleged to have been done in violation of the laws and public policy of the State. Upon motion filed by the plaintiff, certain defenses raised by the answer were stricken therefrom by the trial court. Inasmuch as the action of the trial court in striking certain defenses from the answer is assigned as error upon this appeal, the stricken defenses will be referred to, when necessary, in the course of our opinion. The reply is a general denial of the averments of the answer.

The evidence on behalf of plaintiff tends to show that plaintiff, a married woman, was twenty-seven years of age at the time of the trial, and had begun teaching the public school in the said school district in the fall of 1923; that she taught in the district school two full terms of eight months each, or a total of sixteen months; and that, on August 31, 1923, plaintiff received from the Superintendent of Schools of Gentry County a certificate of qualification, whereby authority was given plaintiff to teach in the public schools of Gentry County for the period of two years from the date of said certificate, or until August 31, 1925, unless said certificate be revoked by the county superintendent of schools. There is no evidence in the record that such certificate was revoked by the county superintendent of schools. The certificate was filed by plaintiff with the clerk of the defendant school district, and was on file with the clerk of the defendant school district on December 18, 1924, when the alleged contract of employment in controversy was executed. On August 31, 1925, the date of expiration of the prior certificate, the county superintendent of schools issued and delivered to plaintiff another certificate of qualification, whereby authority was given to plaintiff to teach in the public schools of Gentry County for a period of two years from the date of said certificate, or until August 31, 1927, unless said certificate be revoked by the county superintendent of schools.

The board of directors of the defendant school district, in December, 1924, was composed of three members, whose names are J. W. Cottrill, W. S. Ward and W. D. Ralph. Mr. Cottrill was the duly elected president and Mr. Ward was the duly elected clerk, of the board of directors of said common school district. It appears from the evidence that the tenure of office of J. W. Cottrill, as a director of the school district, expired on the date of the annual meeting (1925) of the school district, which, by statute (Sec. 11209, R. S. 1919), was required to be held on the first Tuesday in April, 1925. The respective terms of office of the other two members of the board of directors, W. S. Ward and W. D. Ralph, extended over and beyond the 1925 annual meeting of the said school district.

According to plaintiff's evidence, about the middle of December, 1924, plaintiff, who was then teaching a second term in the public school of defendant school district, desired to ascertain whether she would be retained by the board of directors of the school district to teach the public school in the district for the next ensuing term, or school year. Plaintiff testified that she desired to know whether her services, as teacher of the district school, would be continued during the next ensuing school year in order that she and her husband might decide whether they would continue to reside in the school district, or move elsewhere. Plaintiff testified that she interviewed each of the three members of the board of directors of the school district, telling each of them that ''she would like to have the school if all the rest were in favor of her, and would like to know right away, because they (plaintiff and her husband) were supposed to give possession (of a rented house) in March, 1925, and if she got the school, they wanted to stay, and if she didn't, they didn't want to stay.'' Plaintiff was paid a salary of $80 per month during her first term as teacher of the public school, and was paid a salary of $85 per month during her second term. She testified that she told each of the members of the board of directors of the school district that ''she would like to have $90 a month,'' if she were employed to teach the district school during the school year 1925-1926.

The evidence further shows that J. W. Cottrill, as president, called a special meeting of the board of directors of the defendant school district to be held on December 18, 1924, at the store and place of business of W. D. Ralph in the village of Lone Star, which was situate within the school district. All three members of the board of directors, Cottrill, Ward and Ralph, attended such meeting, which was held in Mr. Ralph's store in Lone Star about three or 3:30 o'clock on the afternoon of December 18, 1924. The evidence shows that Mr. Cottrill, when notifying Mr. Ward and Mr. Ralph that a special meeting of the board of directors of the school district would be held at the Ralph store in the village of Lone Star on

the afternoon of December 18, 1924, told each of them that the purpose of such meeting was "to hire a teacher" of the district school for the next ensuing school year.

Respecting the action of the board of directors at such meeting, Mr. Cottrill testified: "We all agreed there that all three were willing to hire her (plaintiff), and we agreed on the price and we hired her." Mr. Ward testified that "they asked Mr. Ralph what he thought about it; that Ralph said his business demanded his attention and that, as far as he was concerned, it was all right; Cottrill said it suited him all right; that he, Ward, said whatever they did was all right with him; that they were to pay plaintiff $90 a month for eight months, and that the school term was to begin on the first Monday in August, 1925." Both Cottrill and Ward testified that the customary date of commencing the school term in the district was the first Monday in August of each year. It was also testified by both Cottrill and Ward that, at the conclusion of the meeting, and before leaving Mr. Ralph's store, Mr. Ward, as clerk of the board of directors of the school district, wrote upon a blank sheet of paper a minute of the action and proceedings of the board taken at the meeting of December 18, 1924. The written minute of the proceedings of the board of directors purported to have been taken at such meeting was put in evidence by plaintiff, over the objections of defendant. It was signed by directors Ward and Cottrill, and reads as follows:

"The school board of District No. 11, Lone Star, Gentry County, Mo., met in special session on December 18, 1924, at W. D. Ralph's store. All members present. Employed Gladys E. Tate to teach the school in District No. 11, beginning on the 3rd day of August, 1925, for a term of eight months at a salary of $90 per month. This election was by the consent of all members of board. W. S. Ward, Clerk. J. W. Cottrill."

The evidence is uncontradicted that the paper writing aforesaid was never attached to, or incorporated in, the record book of the school district, and that the clerk of the board of directors of defendant school district, Mr. Ward, did not turn over to his successor in office the aforesaid paper writing, or any other record of plaintiff's employment.

Shortly following the meeting of the board of directors of the school district held on December 18, 1924, a written contract of employment was prepared upon the usual printed form, and was signed by plaintiff, and by J. W. Cottrill, as president of the board of directors of the defendant school district, and was attested by W. S. Ward, as clerk of the board of directors. The contract of employment reads as follows:

"This agreement made the 18th day of December, 1924, between Gladys E. Tate, a legally qualified public school teacher, of the first part, and the School Board of District No. 11, County of Gentry, State of Missouri, of the second part.

"Witnesseth: That the said Gladys E. Tate agrees to teach the public school of said District for the term of 8 months, commencing on the 3rd day of Aug., 1925, for the sum of 90 dollars per month, to be paid monthly, and that for services properly rendered and reports correctly made, according to law, said Board agrees to issue warrants upon the Township Treasurer in favor of the said Gladys E. Tate for the amount of wages due under this agreement.

"This contract is subscribed to with a full understanding of Sections 11134, 11135, 11137, 11138, 11159, 11160, 11161, 11211, 11222, 11223, 11227, 11358, 11359, 11360, 11361, 11364, R. S. 1919.

"Done by order of the Board, this 18th day of December, 1924.

"J. W. COTTRILL, President,

"GLADYS E. TATE, Teacher."

"Attest: W. S. WARD, District Clerk."

The contract of employment was not executed in duplicate, and was not recorded or copied upon the record book of the defendant school district, the single copy of such contract having been delivered to plaintiff upon its execution by the parties thereto.

Director W. D. Ralph testified on behalf of defendant that he was present at the meeting of the board of directors held at his store on the afternoon of December 18, 1924, and that he previously had been told by Mr. Cottrill that the meeting would be held for the purpose of hiring a teacher of the district school for the next ensuing school year; that the witness, Ralph, objected to the hiring of a teacher at that time; that witness told directors Cottrill and Ward that it was too early to hire a teacher for the next school year, and that witness said "he didn't think they ought to hire Mrs. Tate; that there had been complaint about her teaching and there were some things about her teaching he (witness) didn't like," and that the patrons of the school district were dissatisfied with plaintiff's employment; that the matter of plaintiff's employment was merely "talked about" at the meeting by the three members of the board of directors, and that no motion was made to employ plaintiff as teacher, and no minutes were made or kept of the proceedings of the meeting; that Mr. Ward, the clerk of the board, "didn't do any writing there on that day, and that Mr. Cottrill, the president of the board, didn't sign anything on that occasion;" that witness never saw the paper writing purporting to contain the minutes of the meeting of December 18, 1924, until it was offered in evidence at the trial of the present action; that no decision was made at such meeting as to

when the next school term should commence; that witness, Ralph, said to directors Cottrill and Ward, "if you want to hire her (plaintiff) go ahead and hire her, and I will say what I have to say after the annual meeting;" that directors Cottrill and Ward "didn't stay but a very few minutes after that;" that witness didn't give his consent to the employment of plaintiff on December 18, 1924, or at any other time; that twelve or fourteen of the patrons of the school district had made complaint to the witness prior to December 18, 1924, about the character of the work plaintiff was doing; that they complained about the order and discipline of the school under plaintiff, and some of the patrons complained about the progress of their children in the school work; that Mr. Ward resigned as clerk of the board of directors on May 4, 1925, and delivered to his successor the records and minute book of the board; and that Ward, at the time of his resignation as clerk, stated to the other members of the board that he (Ward) had made no record of the employment of plaintiff "to teach for the school year 1925-1926," and that plaintiff had the written contract and "that was the only record there was."

Mrs. Ralph, the wife of W. D. Ralph, testified that she was present in the Ralph store at the time of the meeting of December 18, 1924, and her testimony tends to corroborate the testimony of her husband as to what occurred at such meeting of the school board.

The annual meeting of the school district was held in April, 1925, at which meeting Clyde C. Wilson was elected to the office of director of the school district in the place and stead of J. W. Cottrill, whose term of office expired on the date of the annual meeting of 1925. The evidence tends to show that Mr. Wilson was unfavorable to the employment of plaintiff as teacher for the next school term. A meeting of the board of directors of defendant school district was held on May 4, 1925, at which meeting W. S. Ward resigned as clerk of the board, and Clyde C. Wilson was elected clerk, and W. D. Ralph was elected president, of the board of directors. A minute record of such meeting of the board recites the following: "It is further resolved that the majority of this board does not recognize any previous contract made for the year 1925-26 with Mrs. Gladys Tate for teacher. It is now further resolved that a notice of such action be served on said party."

On May 5, 1925, the board of directors of defendant school district caused to be served upon plaintiff the following written notice:

"Mrs. Charles Tate: Take notice that the newly elected school board of District No. 11 in Howard Township, Gentry County, Missouri, are not bound, and will not hold themselves bound, by any contract of employment made with you by the old members of said board for the school year 1925-26, for the reason that said board

with without power or authority to make such contract. This notice is served upon you that you may know of the attitude of this board and govern yourself accordingly.

"W. D. Ralph, President,

"C. C. Wilson, Dist. Clerk."

On June 6, 1925, plaintiff personally delivered the following written notice to each of the three directors of the defendant school district:

"I desire to notify you, and each of you, that, pursuant to the terms of a certain contract entered into between the Board of Directors of said District No. 11 and myself, dated ——————, by which I was employed to teach the school in said District No. 11, beginning on the 3rd day of August, 1925, I consider said contract binding upon the said District and myself, and that I will be ready to perform, and will perform, my part of said contract when the date arrives for the opening of school in said district. So that you may fully understand my position in the matter, I am addressing to each of you, as members of said Board of Directors, this notice.

"Respectfully,

"Gladys E. Tate."

At a special meeting of the board of directors of defendant school district held on May 16, 1925, an order was made and entered upon the records of said board employing Miss Ruby Parman to teach the district school for the next school term, and a written contract, dated May 18, 1925, was executed by the then president, and by the then clerk, of said board of directors, and by Miss Parman, whereby Miss Parman was employed to teach the public school of said district for the term of eight months, commencing on August 31, 1925, for the sum of $80 per month, payable monthly.

The evidence further shows that on the Saturday next before Monday, August 3, 1925, plaintiff went to director Wilson, clerk of the district school board, and asked for the keys to the district schoolhouse, which request director Wilson refused by stating to plaintiff that the board of directors had given orders not to deliver the keys to plaintiff. On Monday morning, August 3, 1925, plaintiff went to the schoolhouse and found the doors locked, and she was unable to gain entrance or admittance. Plaintiff testified that she had notified the patrons of the school district that she would open the school term on the morning of Monday, August 3, 1925, and that twenty-one children were present to attend the district school on that morning. Plaintiff testified that thereafter she made efforts to obtain employment as a teacher in other common school districts of the State, but that she was unable to obtain employment as a teacher for the school year 1925-26, for the reason that teachers had then been employed by the various common school districts for the current school year.

One of defendant's witnesses testified that, on a certain occasion, he heard Director Ward, in discussing the employment of plaintiff as teacher in December, 1924, say: "When I did this, I just did it to spite some of them; I did this for spite work; I would rather have had Luna Hunter (as teacher)." A witness for plaintiff, on the other hand, testified that he did not hear director Ward make such statement upon the occasion referred to by defendant's witness, although plaintiff's employment was a matter of discussion on that occasion.

The defendant offered to show by several witnesses that such witnesses had complained to the directors of the school district prior to December 18, 1924, about the progress their children had made in the school work under the teaching and instruction of plaintiff, and that such witnesses had complained to the school district directors about the lack of order and discipline in the district school under the plaintiff, but such proffered testimony was excluded by the trial court. The ruling of the trial court, however, allowed the defendant to "show there were complaints made by the patrons of the school, but without going into detail about it." The trial court further permitted defendant to offer in evidence the names of those patrons of the school district who had complained against the teaching and instruction of plaintiff, and that dissatisfaction was expressed by some patrons of the school district prior to December 18, 1924, respecting a continuance of the employment of plaintiff as teacher of the district school.

The defendant and appellant has made twenty separate assignments of error herein, but several of the assignments of error may properly be grouped together, and will be discussed and ruled in the opinion herein as a single assignment of error.

I. Appellant assigns error of the trial court in overruling defendant's demurrer to plaintiff's petition, and in the refusal of the trial court to peremptorily direct a verdict for defendant upon the asserted ground that the alleged contract of employment between plaintiff and defendant, dated December 18, 1924, is unlawful and void, and in contravention of the public policy of the State as expressed in the statutory law of the State, and in the rulings of our appellate courts. These assignments of error present the main question for our decision herein. Abstractly stated, the question for decision is: Has the board of directors of a common-school district in this State the lawful power to employ, and to make a contract of employment with, a legally qualified teacher for a reasonable term or period of employment which commences after, and extends beyond, the expiration of the term of office of one, or more, members of such board? The answer to such

question depends upon the legislative intent as expressed in the statutory law of the State, and upon the weight of juristic authority in the construction of like or similar statutes.

The statute (Sec. 11213, R. S. 1919) applicable to common school districts provides: "The government and control of the district shall be vested in a board of directors composed of three members, who shall be citizens of the United States, resident taxpayers of the district, and who shall have paid a state and county tax within one year next preceding his, her or their election, and who shall have resided in this State for one year next preceding his, her or their election or appointment, and shall be at least twenty-one years of age. Said directors shall be chosen by the qualified voters of the district at the time and in the manner prescribed in Section 11209 of this article, and shall hold their office for the term of three years, and until their successors are elected or appointed and qualified, except those elected at the first annual meeting held in the district under the provisions of this chapter, whose term of office shall be for one, two and three years, respectively. . . ."

Section 11209, Revised Statutes 1919, provides: "The annual meeting of each school district shall be held on the first Tuesday in April of each year, at the district schoolhouse, commencing at two o'clock P. M. . . ."

Section 11210, Revised Statutes 1919, provides: "The qualified voters assembled at the annual meeting, when not otherwise provided, shall have power by a majority of the votes cast: . . . to choose, by ballot, one director, who shall hold his office for the term of three years and until his successor is elected and qualified; . . . to fill vacancies, if any, caused by death, resignation, refusal to serve, repeated neglect of duty, or removal from the district; and the persons thus elected shall hold their office for the unexpired term and until their successors are elected and qualified. . . ."

The foregoing statutes reflect the clear and unmistakable intention of the General Assembly, which is the law-enacting authority of our State, that the government and control of each of the common-school districts in the State shall be vested in a board of directors composed of three members, whose terms of office shall not expire concurrently, but that the term of office of only one of the three members composing said board shall expire during each school year, thereby reflecting the intention of the General Assembly that such governing board of directors of a common-school district shall be a continuous body, or entity, of which a majority of the members composing the board shall continue in office during the next succeeding school year. While provision is made in the statutes for a change in the personnel of the membership of the board of directors by the vote of the qualified electors of the school district at each

annual meeting of the school district, yet the intention of the Legislature is clearly reflected in the statutes that the board of directors of a common school district is a continuous body or entity, and that transactions had, and contracts made, with the board are the transactions and contracts of the board, as a continuous legal entity, and not of its individual members.

Section 11137, Revised Statutes 1919, provides, *inter alia*: "The board shall have power, at a regular or special meeting, to contract with and employ legally qualified teachers for and in the name of the district; all special meetings shall be called by the president and each member notified of the time, place and purpose of the meeting. The contract shall be made by order of the board; shall specify the number of months the school is to be taught and the wages per month to be paid; shall be signed by the teacher and the president of the board, and attested by the clerk of the district when the teacher's certificate is filed with said clerk, who shall return the certificate to the teacher at the expiration of the term."

The legislative grant of power to the board of directors of a school district to employ, and to contract with, legally qualified teachers is made general by the statute. No express limitation is put upon the grant of power by any language of the statute; nor is any limitation upon the power granted to be reasonably implied from the language and context of the statute. The statute does not limit, or undertake to limit, either expressly or impliedly, the period of employment of a teacher to the single and particular school year in which the contract of employment is made by the school-district board of directors.

In support of its contention and insistence that the board of directors of the defendant school district had no lawful power or authority to make the contract of employment with plaintiff for her services as teacher for the next ensuing school year, appellant has placed reliance upon the rulings made in Loomis v. Coleman, 51 Mo. 21; Crabb v. School District, 93 Mo. App. 254; and Burkhead v. Independent School District (Iowa), 77 N. W. 491. All of the cited cases are clearly distinguishable from the case at bar. The Loomis case, supra, involved the construction of the Public School Act of March 19, 1870 (Laws 1870, pp. 138-158). That act (Sec. 2, idem., p. 140) provided for a board of directors for each school district in the State, composed of three directors, all of whom were elected annually, by ballot, by the qualified voters of each school district, and "who shall hold their office for the period of one year, and until their successors are elected and qualified." Under said act, the board of directors of a school district was not made a continuous body, such as is provided by the present and existing statute. In the Loomis case, it appeared that the three members of

the new board of directors of the school district were elected on Saturday and qualified on the next succeeding Monday; before the contract of employment was signed by and between the plaintiff, Loomis, and the old board of directors. Hence, it was properly ruled by this court in the cited case that "it is clear that the old directors were then out of office, and their assumed action was wholly *ultra vires.*" In the Crabb case, supra, it was contended that the contract of employment of plaintiff as teacher of a district school was void for uncertainty and indefiniteness, in that the contract specified no time at which plaintiff's employment was to begin. It was ruled by the Kansas City Court of Appeals, in that case, that the law implies that the services of the teacher are to be rendered within the ensuing school year, and that the contract of employment was referable to the time when defendant's board of directors should fix the beginning of the school term within the ensuing school year. The power of the board of directors of the defendant school district to make the contract of employment was not involved in the cited case, and was not a question, or issue, for decision in that case.

In the Burkhead case, supra, a contract of employment, whereby plaintiff was employed as superintendent and teacher of the schools of defendant school district for the period of five years, was held to have been made in violation of certain statutes of the State of Iowa which, by implication, were deemed to reflect the intention of the legislature of that state that such contracts of employment shall be limited in duration to the single and ensuing school year, as determined by the board of directors of the school district. In ruling such case, however, the Supreme Court of Iowa said (77 N. W. 1. c. 492): "By Section 2743 of the Code the school district is a body politic, and as such may sue and be sued. The board of directors represents the district,—from a legal standpoint, is the district. It is a continuous body. The officers change, but the corporation continues unchanged. The contracts are of the corporation, and not of the members of the board individually. It is not essential, then, that contracts be limited to the terms of office of the individuals making up the board." (Citing numerous authorities in support of the rule so announced.)

The prevailing weight of judicial authority on the subject is thus stated in 35 Cyc. 1079, 1080: "In the absence of a statutory provision limiting, either expressly or by implication, the time for which a contract for employment of a school-teacher may be made to a period within the contracting school-board's or officers' term of office, such board or officers may bind their successors in office by employing a teacher or superintendent for a period extending beyond their term of office, or for the term of school succeeding their term of office, provided such contract is made in good faith, with-

out fraud or collusion, and for a reasonable period of time; and the succeeding board or officers cannot ignore such contract because of mere formal and technical defects, or abrogate it without a valid reason therefor."

The prevailing rule is thus stated in 24 Ruling Case Law, 579: "In the absence of an express or implied statutory limitation, a school board may enter into a contract to employ a teacher or any proper officer for a term extending beyond that of the board itself, and such contract if made in good faith and without fraudulent collusion binds the succeeding board. It has even been held that under proper circumstances a board may contract for the services of an employee to commence at a time subsequent to the end of the term of one or more of their number and subsequent to the reorganization of the board as a whole, or even subsequent to the terms of the board as a whole. The fact that the purpose of the contract is to forestall the action of the succeeding board may not of itself render the contract void. But a hiring for an unusual time is strong evidence of fraud and collusion, which, if present, would invalidate the contract. Of course, any statutory implication that the powers of the board are limited to the current term would invalidate contracts for a term extending beyond that of the board."

In a leading case upon the subject, the New York Court of Appeals has said, in Wait v. Ray, 67 N. Y. 36, 38: "School districts are *quasi* corporations, and trustees are officers of them, and when they act officially and within their jurisdiction they bind the corporation which they represent, and their legal contracts can be enforced against their successors in office. [Silver v. Cummings, 7 Wend. 182; Williams v. Keech, 4 Hill, 168.] Trustees have power 'to contract with and employ all teachers in the district school or schools.' [Laws of 1864, chap. 555, p. 1253.] This power is general and unlimited. If it had been intended that the contracts which they are authorized to make should not extend beyond their term of office, this general language would have been limited. . . . And it would be a strange construction of the statute which would terminate the teacher's contract with every such termination of the trustee's office. The power to employ teachers is, therefore, very wisely made general; and a contract for one year or more, if made in good faith, and without fraudulent collusion, must be held binding. This power, like every other power confided to public officers, may be abused, but the fact that it may be abused furnishes no argument against its existence. The danger of abuse is, however, very small, as a hiring for an unusual time would be strong evidence of fraud and collusion; and if a teacher, under such circumstances, should persist in teaching against the protest of the district, the state superintendent might find cause to annul his certificate, and thus terminate his em-

496

ployment. . . . The contention of the defendant would be more plausible if there were a general rule that public officers could make contracts to continue only during their terms of office, but there is no such general rule; and as to officers who have general powers to contract, unless there is some limitation of their power, their contracts may extend beyond their terms, and bind their successors. The public exigencies demand that public officers should be clothed with such power, and protection against its abuse is found in official integrity, which is the rule rather than the exception; and also in the fact that contracts, the offspring of fraud or collusion, may be safely repudiated.''

In Gates v. School District, 53 Ark. 468, 470, it is said: ''The statute provides that the 'board of directors shall have power to employ a superintendent of the schools.' The power is granted in the broadest terms, without placing any limitation or restriction upon its exercise. . . . It is contended that the selection of superintendents during each year should be left to the exclusive control of the board for that year. As a matter of policy, an argument might be made upon either side of that contention. There is nothing in the law to sustain the affirmative. Public interests might suffer from unwise contracts covering an extended term in future; they might suffer equally for want of power to make a contract when a good opportunity offered. But with the question of policy we have no concern, except in so far as it aids in ascertaining legislative intent. There is nothing in the act that implies that the Legislature intended either more or less than it said. We therefore conclude that the act furnishes an accurate expression of legislative intent, and that there is no law that forbids the school board to make a contract for a superintendent for a term beginning after some members of the board go out of office. This conclusion is sustained by the weight of authority as well as by reason. [Reubelt v. Noblesville, 106 Ind. 480; Wait v. Ray, 67 N. Y. 38; Tappan v. School District, 44 Mich. 500; Webster v. School District, 16 Wis. 337.]''

In Reubelt v. Noblesville, 106 Ind. 478, 7 N. E. 206, 208, it is said: ''The authority of the board of school trustees to employ teachers and a superintendent of the schools in the town or city is given in general terms, just as the authority to make other contracts is given. . . . There is nothing in this grant of power to employ teachers and a superintendent which in any way limits the authority of the board of trustees to contracts that are to be performed during the existence of any particular organization of that body. The simple fact that reorganizations are provided for, we think, clearly does not impose a limit upon the general grant. . . . It may be that instances will occur when the authority to employ teachers and superintendents in advance of the incoming of a new member of

the board may be abused, but the possibility is not very great, as but one member goes out at a time. But the fact that the authority may be abused is not a sufficient reason for holding that it does not exist. On the other hand, desirable teachers and superintendents might be lost to the schools if the board were not authorized to employ them until after the election in June.''

Other authorities following the prevailing rule upon the subject are: Moon v. School City of South Bend, 50 Ind. App. 251, 98 N. E. 153; Farley v. Board of Education, 62 Okla. 181, 162 Pac. 797; School District v. Gigax, 69 Colo. 161, 170 Pac. 184; Rivers v. School District, 68 Okla. 141, 172 Pac. 778; Gardner v. School District, 161 Ark. 466, 257 S. W. 73; State ex rel. v. Board of Education, 94 W. Va. 408, 118 S. E. 877; Taylor v. School District, 16 Wash. 365, 47 Pac. 758; Splaine v. School District (Wash.), 54 Pac. 766; Farrell v. School District (Mich.), 56 N. W. 1053; Town of Pearsall v. Woolls (Tex. Civ. App.), 50 S. W. 959; Manley v. Scott, 108 Minn. 142, 121 N. W. 628; and see, also, annotated footnote, 29 L. R. A. (N. S.) 657, 658.

The prevailing rule is sound, and is grounded upon good sense and reason. The contract of employment between plaintiff and defendant school district, here in controversy, cannot be held to be void or illegal for any lack of power or authority in the then board of directors of defendant school district to make such contract on December 18, 1924. The eight-month period of plaintiff's employment prescribed by said contract, occurring within the next ensuing school year, cannot well be said, as a matter of law, to be such an unreasonable or unusual period of employment as to bespeak, or to indicate, fraud in the making of the contract. The trial court rightly overruled the demurrer to plaintiff's petition, and rightly refused the peremptory instruction requested by defendant. The assignments of error respecting the aforesaid actions of the trial court must be denied.

II. Appellant assigns error in the action of the trial court in striking from defendant's answer, upon plaintiff's motion, the affirmative defense that the contract of employment of December 18, 1924, amounted to the creation of an indebtedness (on the date of said contract) by the defendant school district in excess of the income and revenue provided, or on hand, to pay such indebtedness, and therefore such contract of employment, and the indebtedness alleged to have been created thereby, are invalid and void because in violation of Sections 11 and 12, of Article 10, of the Constitution of this State.

Section 11, Article 10, of our State Constitution is a limitation upon the annual rate of taxation to be levied for county, city, town and school purposes, and limits the annual rate of taxation for school purposes in school districts (other than those composed of cities of 100,000 inhabitants, or more) to forty cents on the hundred dollars valuation of the taxable property in the school district. Section 12, Article 10, of the Constitution is a limitation upon the annual debt-creating power of such political corporations. It provides: ''No county, city, town, township, school district or other political corporation or subdivision of the State shall be allowed to become indebted in any manner or for any purpose to an amount exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the voters thereof voting at an election to be held for that purpose; . . .''

It is contended by appellant that the contract between plaintiff and defendant school district, dated December 18, 1924, created a debt of the school district in anticipation of the income and revenue of the school district to be provided for the school year 1925-1926, which, by statute (Sec. 11155, R. S. 1919), ''shall commence on the first day of July and end on the thirtieth day of June following;'' that, at the date of said contract of employment, the annual meeting of the school district for the year 1925 had not been held, and the rate of taxation for school purposes in said school district for the school year 1925-26 had not been determined, and the annual assessment of property within the school district had not been made or completed. The precise question for our decision, therefore, is whether the contract of employment created a *debt* of the school district, within the intent and meaning of the aforesaid section of the Constitution, on December 18, 1924, the date of such contract. If such question must be answered affirmatively, the assignment of error is well grounded; if the question must be answered in the negative, the assignment of error must be denied.

The contract of employment of December 18, 1924, is one calling for the personal and professional services of plaintiff for a period of eight months, commencing on the third day of August, 1925, and whereby the board of directors of the school district contracted and agreed to pay plaintiff the sum of $90 per month, payable monthly, ''for services properly rendered.'' It is clear to our minds that such contract is wholly executory, and that the pecuniary liability of the defendant school district thereunder is contingent upon the rendition of such personal services by plaintiff. If, and as, such personal services are properly rendered by plaintiff from month to month, during the term of the contract, the school district becomes indebted to plaintiff for the personal services actually rendered by plaintiff. In the event of the death or disability of plaintiff, either

before or during the term of the employment, the contract is terminated and discharged. "Contracts to perform personal acts are considered as made on the implied condition that the party shall be alive and shall be capable of performing the contract, so that death or disability will operate as a discharge." [13 C. J. 644, and cases there cited.] Thus, the contract here in controversy might never be performed by plaintiff; in which event, of course, there is no pecuniary liability of the school district, and consequently no *debt* on its part. That such contract of employment is wholly executory and contingent is clearly recognized by the school statute (Sec. 11138, R. S. 1919), which provides that, "should the schoolhouse (which the teacher is employed to teach) be destroyed, the contract becomes void." We are constrained to the view that the mere execution of the contract of employment did not create a *debt* of the defendant school district on December 18, 1924, within the meaning or intent of Section 12, Article 10, of the Constitution, and that the defendant school district did not become *indebted* to plaintiff, under the terms of the contract of employment, until the time for the performance of such contract had expired.

Speaking to the subject, Mr. James M. GRAY, in his standard treatise on Constitutional Limitations of the Taxing Power and Public Indebtedness, Section 2162, page 1117, says: "The time when the debt actually comes into existence, as a binding obligation on the municipality, is the time as to which all calculations as to its validity should be made."

In Saleno v. City of Neosho, 127 Mo. 627, 639, wherein it was contended by the defendant municipality that a contract between defendant and plaintiff, whereby the defendant city agreed to pay plaintiff a fixed price annually for twenty years (by way of hydrant rental) for the use of water for the city and other purposes, created an illegal indebtedness of the city within the meaning of the aforesaid constitutional inhibition, this court, en banc, said: "The only question that we have to deal with is, as to whether the contract created an indebtedness upon the part of defendant, as contemplated by the Constitution, and upon that question the authorities are not entirely in harmony. In construing words used in that instrument (i. e., the Constitution), in the absence of some restriction placed upon their meaning, they must be given such meaning as is generally accorded to them. A debt is understood to be an unconditional promise to pay a fixed sum at some specified time, and is quite different from a contract to be performed in the future, depending upon a condition precedent, which may never be performed, and which cannot ripen into a debt until performed. Here, the hydrant rental depended upon the water supply to be furnished to defendant, and, if not furnished, no payment could be required of it." The

learned writer of the opinion, Judge Burgess, then proceeds to review the authorities, pro and con, bearing upon the question for decision, and concludes: ''Our conclusion is that the weight of authority is adverse to the contention of defendant, and is in accord with the spirit and meaning of our Constitution as we understand it, and as we think also comports with better reason.''

While the correctness of the conclusion reached by this court in the Saleno case, supra, has been sought to be questioned in subsequent cases, this court, en banc, has consistently adhered to, and followed, the rule of construction announced in the Saleno case, although conceding (as was done in the Saleno case) that there is some contrariety of judicial opinion on the subject. [Vide, Water Co. v. City of Neosho, 136 Mo. 498, 507; Water & Light Co. v. City of Lamar, 140 Mo. 145, 156; State ex rel. v. City of Neosho, 203 Mo. 40, 75.] In Mountain Grove Bank v. Douglas County, 146 Mo. 42, 56, this Division of our court ruled, in substance and effect, that a debt of a county is created when the services are rendered, or when the goods are sold and delivered, to the county; in other words, when the contract is actually performed by the party with whom the county has contracted.

Appellant cites Trask v. Livingston County, 210 Mo. 582; State ex rel. v. Gordon, 265 Mo. 181; and State ex rel. v. Hackmann, 280 Mo. 686, in support of its contention that the contract of employment herein violates the constitutional inhibition aforestated. In the Trask case, the defendant county had contracted for the construction of two bridges in September, 1889, and an appropriation was made at that time for the purpose of paying the cost of the construction of such bridges, and the contract, by its terms, was to be wholly performed, and the bridges were to be constructed and completed, during the year 1889. The bridges were not accepted by the county, however, until May, 1890, and warrants were issued and delivered to the contractor by the county, in payment of the contract price of such bridge construction, in May, 1890. It was held that the debt of the county was created in the year 1889, and not in the year 1890, when the bridges were accepted by the county and the warrants were issued to pay for the same; therefore, the contract price for the construction of the bridges was held to be chargeable, as a debt of the county, against the revenues of 1889, and not against the revenues of 1890. The gist of our rulings in the Gordon and Hackmann cases was that a county bond issue creates an immediate and binding debt of the county at the time the bonds are issued, sold and delivered, although such bonds are payable in annual installments thereafter. Obviously, the cases cited by appellant have no bearing or application upon the question for decision in the case at bar, namely, whether a wholly executory and

contingent contract for personal services to be rendered at a future time, whereby a school district is obligated to pay for such personal services only when, and as, rendered by the opposite party to such contract, constitutes an indebtedness of the school district until such personal services have been actually rendered and the contract has been performed. Appellant has cited decisions from other and foreign jurisdictions which hold that similar contracts of employment are in derogation of like constitutional limitations upon the creation of municipal, or quasi-municipal, indebtedness. We recognize that there is some contrariety of judicial opinion on the subject, as was recognized by this court, en banc, in the Saleno and kindred cases, supra, but the rule as announced by this court in the Saleno and kindred cases follows the weight of juristic authority, which is to the effect that executory and contingent contracts which are to be performed *in futuro* do not constitute an indebtedness against the municipal, or quasi-municipal, corporation, in the sense of the constitutional inhibition, until such contracts have been performed.

The trial court committed no error in striking the pleaded defense from defendant's answer, and the appellant's assignment of error is not well grounded. There was no specific averment made in defendant's answer, and no proof was offered on the trial by defendant, that the income and revenue of defendant school district for the school year 1925-1926 was insufficient to pay and discharge the current debts of the school district at the times the contract of employment was performable by plaintiff, and at the times the monthly warrants were issuable to plaintiff under such contract.

III. Error is assigned in the action of the trial court in striking from defendant's answer the affirmative defense that, at the time of the signing and execution of the contract of employment on December 18, 1924, plaintiff had not then furnished a certificate of good health, as provided by Section 3 of the act of the General Assembly of April 8, 1921. [Laws 1921, pp. 641-643.] The said section reads: "No teacher shall be employed to teach in the schools of Missouri who have (has) not furnished a certificate by a reputable physician, showing said teacher to be in good health and free from any contagious disease at the time the certificate is granted."

Appellant claims that such affirmative defense was stricken from the answer by the trial court upon the theory that the quoted section of the act of April 8, 1921, is unconstitutional because in derogation of Section 28, of Article 4, of our State Constitution, which provides: "No bill . . . shall contain more than one subject, which shall be clearly expressed in its title." The record does not disclose, however, the theory of the trial court's action in striking said affirmative

defense from the answer, whether upon the ground of the unconstitutionality of Section 3 of said act, or otherwise. We are of opinion that the action of the trial court is properly sustainable upon another ground than the unconstitutionality of the quoted section of the act, and, hence, it becomes unnecessary to pass upon, or consider, the constitutionality of said section. The language of the section is that "no teacher shall be employed" who has not furnished the health certificate required by said section of the act. It is obvious to our minds that it was the legislative intent, derivable from the language used in the statute, that the time of furnishing the required certificate shall be referable to the actual period of employment of the teacher, and not to the date of execution of the contract of employment. The evident object and purpose of the statute is that the teacher shall be in good health and free from any contagious disease during the term of actual employment, or, at least, at the beginning of the term of actual employment. [Crabb v. School District, 93 Mo. App. 254, 260.] Any other construction would make the statute uncertain and indefinite in meaning and application; for, if the statute be construed literally, a teacher may comply with the literal requirement of the statute by "furnishing a certificate by a reputable physician, showing said teacher to be in good health and free from any contagious disease *at the time the certificate is granted*," although the certificate of the physician may have been granted one, five, ten, or any number of years prior to the actual period of employment of the teacher. It would have been a wholly useless act for plaintiff to have furnished the health certificate required by the statute unless she had been permitted to teach. The defendant school district refused to permit plaintiff to teach the district school when the time for the performance of the contract of employment arrived, and the record herein shows beyond dispute that the refusal of the board of directors of defendant school district was not predicated upon the failure of plaintiff to furnish a health certificate at that time. There was no charge or averment in the answer, as filed, that plaintiff had failed to furnish a certificate of health at the commencement of the period of actual employment. The trial court rightly struck the affirmative defense from defendant's answer.

IV.   Error is assigned by appellant in the action of the trial court in striking from defendant's answer the affirmative defense that plaintiff did not have on file with the clerk of defendant school district, on December 18, 1924, a certificate of qualification authorizing her to teach in the public schools of Gentry County for the full time of employment provided by the contract of December 18, 1924. Section 11137, Re-

vised Statutes 1919, provides: "The certificate must be in force for the full time for which the contract is made."

On December 18, 1924, the date of execution of the contract of employment, plaintiff held a certificate of qualification, issued and signed by the superintendent of schools of Gentry County, authorizing her to teach in the public schools of said county until August 31, 1925, and such certificate was then on file with the clerk of defendant school district. Another certificate of qualification was issued to plaintiff by the Superintendent of Schools of Gentry County on August 31, 1925, authorizing plaintiff to teach in the public schools of said county until August 31, 1927. Such was a sufficient compliance with the statutory requirements. It has been consistently and repeatedly ruled that a proper and reasonable construction of the statute does not require that the teacher shall have, at the time of employment, a certificate which extends to the end of the term of employment, provided that, during the term of employment, such teacher has the proper certificate. [School District v. Edmonston, 50 Mo. App. 65, 70; Crabb v. School District, 93 Mo. App. 254, 260; Hibbard v. Smith, 135 Mo. App. 721, 727.] The affirmative defense was properly stricken from the answer by the trial court.

V. Appellant claims that the trial court erred in admitting in evidence, over the objections of defendant, the written contract of employment of December 18, 1924, and the written minute of the proceedings of the board of directors of defendant school district at the special meeting of the board held on December 18, 1924. The ground of appellant's contention is that the school board's order of employment of plaintiff was not spread of record upon the regular minute, or record, book of the school district.

Section 11220, Revised Statutes 1919, makes it the duty of the clerk of the school district to procure the necessary record books for the proper transaction of the duties of his office. Section 11215, Revised Statutes 1919, requires that "the clerk shall keep a correct record of the proceedings of all the meetings of the board." Section 11137, Revised Statutes 1919, provides that the contract of employment shall be made by order of the board, and that "all transactions of the board under this section must be recorded by and filed with the district clerk." Section 2165, Revised Statutes 1919, provides: "In every case of contract entered into by any . . . school district or other municipal corporation, or by any officer or agent on their behalf, duplicate copies of the same shall be executed . . . one of which shall be filed . . . in such office or with such officer of the . . . school district or other

municipal corporation as may be charged with the keeping of the contracts thereof, and shall not be taken thence except to be used for the purposes of evidence in some legal matter or cause; and in case of variance between such copies, the one on file shall control in the construction of the contract.''

Such statutory requirements seemingly have been held to be directory, and not mandatory. [Page v. Township Board of Education, 59 Mo. 264; Saleno v. City of Neosho, 127 Mo. 627, 638; McShane v. School District, 70 Mo. App. 624, 628; Decker v. School District, 101 Mo. App. 115, 119; Hibbard v. Smith, 135 Mo. App. 721, 728.] But, whether the requirement of Section 11137, Revised Statutes 1919 (which section of the statute relates solely to the matter of employment of teachers), to the effect that ''all transactions of the board under this section must be recorded by and filed with the clerk,'' be deemed merely directory, or whether such requirement be deemed mandatory, nevertheless, we are of opinion that the written minute of the proceedings of the board of directors of the school district on December 18, 1924 (which minute, according to the testimony of directors Ward and Cottrill, was written by Ward at the close of such meeting, and was then signed by both Ward and Cottrill), amounted to a substantial compliance with the statutory requirement, although such written minute was not thereafter transcribed by Ward, the district clerk, upon the official record book of the school district. [Foreman v. School District, 81 Ore. 587, 159 Pac. 1155, 1158; Trustees of School District v. Brooks, 163 Ky. 200, 173 S. W. 305.] There are respectable judicial rulings to the effect that, had no written minute of the proceedings of the board at the meeting of December 18, 1924, been made by the clerk of the board, nevertheless, the action and proceedings of the board at such meeting may be proved by the parol testimony of those persons who were present at the meeting of the board. [German Insurance Co. v. Independent School District, 80 Fed. 366, 367; School Directors v. Kimmel, 31 Ill. App. 537, 542; Pollard v. School District, 65 Ill. App. 104, 106; School Directors v. McBride, 22 Pa. St. 215, 218; Roland v. School District (Pa.), 28 Atl. 995, 996; Alvord v. Town of Chester (Mass.), 61 N. E. 263, 264.] The appellant's assignment of error must be denied.

VI. Appellant assigns error in the action of the trial court in striking from defendant's answer the affirmative defense that plaintiff ''had not rendered, and was not rendering, proper or satisfactory service in teaching and conducting said public school, and complaint on account thereof had been made to the board of directors of said school district, and particularly to the said J. W. Cottrill and W. S. Ward, by numerous

resident citizens and taxpayers of said school district, and by officers, whose duty it was to inquire into and ascertain the conduct and management of said school by the said Gladys E. Tate.'' Error is also assigned in the exclusion, by the trial court, of the proffered testimony of certain patrons of the school district as to the character of work done by plaintiff in the teaching of the district school, and respecting the discipline and order of the district school under plaintiff, and that certain patrons had complained of the progress made by their children under plaintiff's instruction and teaching.

The school law of this State (Sec. 11358, R. S. 1919) has very wisely invested the several county superintendents of schools with the exclusive power and authority to examine teachers and grant certificates of qualification to teach in their respective counties, or in the State. Such certificate of qualification, when signed and issued to a teacher by a county superintendent of schools, is conclusive evidence of the teacher's competency and qualification, and is revocable only by the county superintendent of schools, and then only upon written charges, signed and sworn to by the party or parties making the accusation, and filed with the county superintendent, and upon a hearing, after at least ten days notice to the teacher, with the right of the teacher to appeal from such hearing to the circuit court of the county. [Sec. 11364, R. S. 1919.] Section 11137, Revised Statutes 1919, grants to the board of directors of a school district the unlimited power to contract with and employ ''legally qualified teachers.'' Thus, the question of a teacher's competency and qualification is not made determinable by, or dependent upon, the whim or caprice of one, or more, patrons of the school district, but is determinable solely by the single constituted statutory authority, namely, the county superintendent of schools.

The trial court allowed the defendant school district to offer proof on the trial tending to show that complaints against plaintiff, as teacher of the district school, had been made to the several members of the board of directors of the defendant school district by certain patrons of the school district prior to the making of the contract of employment on December 18, 1924, but denied to the defendant school district the right to offer proof of the details and substance of such complaints. We perceive no error in the rulings or actions of the trial court complained against, and the assignments of error must be denied.

VII. Appellant assigns error in the giving and in the refusal of certain instructions. Complaint is made of the giving of plaintiff's instructions numbered 6 and 7. In substance, those instructions told the jury that, if they found and believed from the evidence that the board of directors of defendant

school district met as a board at director Ralph's store on December 18, 1924, for the purpose of employing a teacher, and that said board, or a majority of them, at said meeting then employed plaintiff to teach the district school, and thereafter entered into a contract with plaintiff, signed by plaintiff and the president of the board, and attested by the clerk of the board, it was not necessary that the clerk of the district should make any record of said proceeding, or reduce the same to writing, and that the directors, Ward and Cottrill, acting as such at said meeting, had the authority and right to employ plaintiff to teach the term of school in said district to begin on August 3, 1925, for eight months at a salary of $90 per month, even though the director Ralph may not have consented thereto, and objected to such employment of plaintiff; and, furthermore, if the jury found and believed from the evidence that, on December 18, 1924, the three members of the school board met and held a meeting as a board of directors, and at said meeting, if any, the said board of directors, or a majority of them acting as such directors, employed plaintiff to teach the public school in said district for a term of eight months, commencing on August 3, 1925, for the sum of $90 per month, and that on said date plaintiff was licensed to teach in the public schools of Gentry county, by then and there having a certificate issued to her by the county superintendent of schools, and that plaintiff continued to be so licensed to teach during the time she was so employed to teach, if the jury shall find that she was so employed, and that thereafter the contract of date of December 18, 1924, in evidence in the cause, was signed by plaintiff and by the president of the board of directors of defendant school district, and was attested by the district clerk, and was delivered by the district clerk to plaintiff, and if the jury further found and believed that plaintiff was ready, willing and able to perform the said contract on her part, but that the defendant school district, acting by and through its board of directors, refused to permit plaintiff to comply with said contract, and prevented plaintiff from fulfilling said contract on her part, by refusing plaintiff the right to enter the district schoolhouse, and by hiring another teacher to teach said term of school, and by putting such other teacher in possession of the schoolhouse, then plaintiff is entitled to a recovery of her damage.

The appellant's criticism of the said instructions is that they amounted to a roving commission to the jury to find for plaintiff, without requiring the jury to find that the contract of employment was made by order of the board of directors of the school district entered, in writing, upon the records of the school district, and without telling the jury what action, on the part of the board, is necessary to constitute a valid order for the employment of a teacher;

and, furthermore, that it was the province of the court, and not that of the jury, to determine the legality of the contract of employment, and whether the making of such contract had been legally and properly ordered by the board, and therefore said instructions submitted a question of law to the determination of the jury. If such instructions well may be deemed to have erroneously submitted a question of law to the jury, then such error was harmless, and resulted in no prejudice to defendant. ''The erroneous submission of questions of law to the jury will not be ground for reversal where no prejudice resulted to appellant. Error in submitting a question of law to the jury is harmless where the jury decides the question correctly, . . . Error .in submitting a question of law is also harmless where it gives the appellant an additional chance for a favorable verdict, where the court in denying a motion for a new trial virtually held as matter of law that appellee was entitled to recover, . . .'' [38 Cyc. 1530, 1531.] We think that said instructions fairly and clearly submitted to the jury for determination the fact, and the issue, of plaintiff's employment by the school district board of directors, and that no reversible or prejudicial error was committed by the trial court in the manner of such submission, and in the giving of said instructions.

Error is claimed by appellant in the giving of plaintiff's instructions numbered 10 and 11. The said instructions told the jury, in substance, that, if they found for plaintiff, they must assess her damage at the sum of $720, less such sum, if any, that the jury might find and believe from the evidence plaintiff could have earned as a school teacher during the term of her employment by defendant school district, if any; and if the jury found and believed from the evidence that plaintiff diligently sought other employment as a teacher, but was unable to find employment as a teacher during the term for which she had been employed by defendant, if any, then their verdict must be for the sum of $720. Said instructions further told the jury that plaintiff was not required to seek or accept employment other than that as a teacher, and that plaintiff was not required to seek any other employment as teacher until August 3, 1925.

It is claimed that said instructions are erroneous in that they do not rightly declare the law to be that plaintiff was required to exercise due diligence in seeking other employment of a similar character prior to August 3, 1925 (the date of commencement of the term of employment under the contract of December 18, 1924), and after she had been personally served, on May 5, 1925, with written notice that the board of directors of defendant school district would not be bound by the former contract of employment, the service of which written notice, it is urged by appellant, removed

any reasonable expectation that plaintiff would be required to teach the term of school in question.

The school statute (Sec. 11138, R. S. 1919) provides that a teacher's contract of employment "shall be construed under the general law of contracts, each party thereto being equally bound thereby," and, furthermore, that "the board shall have no power to dismiss a teacher; but should the teacher's certicate be revoked, said contract is thereby annulled." In view of the statute, plaintiff had the right, and it was her positive duty, to hold herself in readiness to perform her part of the contract of employment until the time for the performance of the contract, August 3, 1925, had arrived; otherwise, plaintiff would have voluntarily abandoned the contract on her part, and would thereby have forfeited her rights under the contract, by acting upon a written notice (which was tantamount to a dismissal of plaintiff teacher) which the school board had no power to make under the statute. [Wood v. Consolidated School District (Mo. App.), 7 S. W. (2d) 1018, 1021; Oakes v. School District, 98 Mo. App. 163, 165; Baxter v. School District (Mo. App.), 266 S. W. 760, 761.] Besides, the burden of proving that the teacher might have obtained other employment of the same character is upon the school district, and not upon the teacher. [Wood v. Consolidated School District, supra; Edwards v. School District (Mo. App.), 297 S. W. 1001, 1003.] Defendant proffered no such proof upon the trial. The criticised instructions fairly and properly declared the law applicable to plaintiff's measure of recovery, and no reversible error was committed in the giving of said instructions.

Appellant complains of the trial court's modification of defendant's Instruction 0, which instruction, as requested, submitted the issue of fraud and collusion on the part of directors Cottrill and Ward in the employment of plaintiff, and authorized a verdict for defendant school district if the jury should find "that the said Gladys E. Tate *either* knew of such fraudulent acts (if you find same to have been fraudulent and with bad motive) *or that she attempted to carry out said alleged contract and to teach said school.*" The court modified the instruction by striking therefrom the above italicized words, and gave the instruction to the jury as so modified. It is noticeable that the stricken words are in the disjunctive, and not in the conjunctive, form. The modification of the instruction was proper. The fact that plaintiff attempted to carry out, and to perform, the contract of employment, and tendered her services to teach the district school, is not incompatible with good faith on her part, and is not indicative, in and of itself, of any fraudulent collusion on her part with the majority of the board of directors of the school district.

Appellant complains of error in the refusal of defendant's requested instructions E, G and H. Instructions E and G undertook to tell the jury that their verdict must be for defendant and against the plaintiff, unless they found and believed from the evidence that the contract of employment was ordered to be executed by the school board "by an order made and entered of record upon the minutes of the meeting of the board kept for that purpose;" and that, if the jury should find and believe that the record book of the defendant school district, introduced in evidence by defendant, contained no record of a meeting of the board of directors of said school district on December 18, 1924, ordering and directing the employment of plaintiff as a teacher for the period in question, then the contract sued upon is void and their verdict must be for defendant. Instruction H was peremptory in form, and undertook to tell the jury that the board of directors of defendant school district had no lawful right or authority, in the month of December, 1924, to authorize or enter into a contract of employment with plaintiff to teach a term of school commencing in August, 1925, and continuing for a period of eight months thereafter. All of said requested instructions were properly refused by the trial court, for the reasons heretofore stated in this opinion.

The issue of fraud and collusion by and between the school district directors Cottrill and Ward, on the one hand, and plaintiff, on the other hand, was fully and clearly submitted to the jury by defendant's given instructions J, L, M, N and P. The instructions given at defendant's request on such issue were, perhaps, more favorable to defendant than it was entitled to. Be that as it may, however, the finding of the jury was in favor of plaintiff, and against defendant, upon that issue, and such finding is conclusive upon this court.

We have carefully and exhaustively considered and reviewed the numerous matters complained of as error by the appellant, and a thorough examination of the record of the trial court discloses no reversible error. The judgment of the circuit court should be affirmed, and it is so ordered. *Lindsay* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. All of the judges concur.