## FARLEY v. BOARD OF EDUCATION OF CITY OF PERRY.

No. 6538—Opinion Filed Jan. 9, 1917.

(162 Pac. 797.)

**1. Officers — "Public Officer" — Employment Under Contract.**

A public officer is one whose duties are fixed by law and who in the discharge of the same knows no guide but established laws. Employment arising out of a contract whereby the person employed acts under the direction or control of others, and which employment depends for its duration and extent upon such a contract, is not an office.

**2. Municipal Corporations—Board of Education—Superintendent of Schools—Term— "Employe"—"Officer."**

A city superintendent of schools under the laws of the state of Oklahoma, is not an "officer," but an "employe" of the board of education of the city. The board of education of a city is a body corporate, and a change in the personnel of the membership does not affect the entity of the corporate existence. Where there is nothing in the statutes limiting the authority of outgoing members, they may, as a board, before their term of office expires, contract for superintendent of schools under their control for the ensuing year, though the services contracted for may extend beyond the expiration of their terms of office and such contracts will be binding upon the board of education, notwithstanding a change in the personnel thereof, to the same extent as if the new members as such board had made the contract and no further.

**3. Contracts—Construction—Existing Law.**

The existing law of the state is implied and presumed to be a part of every contract, and such contracts are made with reference to the laws governing the same in force at the time, notwithstanding the express terms therein apparently to the contrary.

**4. Municipal Corporations—Board of Education—Authority—Contract.**

The board of education of a city has no power to waive or contract away any right or authority concerning its duties fixed by the statutes in force at the time of making any such contract, it being the rule that such board is acting for the public, and the rights of the public as defined by law cannot be con tracted away. A right given by duly enacted law to the board to discharge a city superintendent at pleasure is meant to protect the school, and cannot be waived or contracted away by the board.

**5. Same—Superintendent of Schools—Removal—Salary.**

Under the law as it existed in this state prior to January 1, 1914, the board of education of a city had the right to employ a superintendent of city schools and remove such superintendent at the pleasure of the board.

Such action on the part of the board cannot be inquired into by the courts, but is final and conclusive, and any superintendent so employed is entitled to compensation only up to the time that he has notice that it is the pleasure of the board to dispense with his services.

**6. Same.**

In such a case of discharge of a city superintendent of schools by a city board of education, the superintendent is entitled to compensation from the time of entering upon his duties to the date he is notified of his discharge.

**7. Same.**

Such superintendent is entitled to pay from the time of entering upon his duties under his contract to the date of notice of discharge, notwithstanding the contract made was consummated between him and the outgoing board for services for the ensuing year that extended beyond the term of office of the outgoing members.

**8. Same.**

Facts in this case examined, and found that the plaintiff is entitled to pay for services as superintendent of city schools under his contract with the outgoing board from July 1, 1913, the date of beginning of his duties, to July 7, 1913, the date of his receiving due notice of discharge, both dates included, though such time extended beyond the term of office of members of the outgoing board.

(Syllabus by Stewart, C.)

Error from County Court, Noble County; L. B. Robinson, Judge.

Action by A. C. Farley against the Board of Education of the City of Perry, Okla. Judgment for defendant, and plaintiff brings error. Reversed, and cause remanded, with instructions to enter judgment for plaintiff and against defendant.

P. W. Cress, for plaintiff in error.

H. E. St. Clair, for defendant in error.

Opinion by STEWART, C. On the 22d day of November, 1913, the plaintiff filed a petition in the county court of Noble county, alleging that he was a teacher by profession and duly licensed to teach school under the laws of Oklahoma and in the city of Perry in said state; that the plaintiff and defendant entered into a contract in writing on the 3d day of May, 1913, which was duly signed pursuant to a resolution duly and regularly passed by the defendant, board of education, at a regular meeting thereof, held on the 8th day of April, 1913, whereby the plaintiff was employed to teach and superintend the schools in the city of Perry, beginning on the 1st day of July, 1913, and ending on the 30th day of June, 1914; that

pursuant to said contract on the 1st day of July, plaintiff entered upon his duties and continued to perform the same up to the 17th day of September, 1913, at which time the defendant wrongfully procured an injunction, enjoining and restraining the plaintiff from further performance of his duties; that the plaintiff has at all times been ready and willing to perform his duties; that the salary contracted for between plaintiff and defendant was $1,500 per year, payable monthly in the sum of $125 per month; that the plaintiff has duly presented to the clerk of said board his claim for warrants as provided for in his contract for the months of July, August, September, October, and November, 1913; that said board has refused to issue said warrants or to pay plaintiff for his services or for loss of time incurred; that there is due and owing plaintiff the sum of $625, together with interest, for which the plaintiff prays judgment. The defendant answers first by way of denying the allegations in said petition, except such as are afterwards in defendant's answer admitted, qualified, or explained. Defendant makes a number of allegations in its special answer—the only allegations therein necessary to be considered in this opinion being that the contract, having been made with the school board as it existed prior to reorganization of said board on the first Monday in May, 1913, was not binding upon the succeeding school board, and, further, that the statutes of Oklahoma fix the tenure of office of superintendent of schools to be during the pleasure of the board of education, and that on the 7th day of July, 1913, the defendant, board of education, passed a resolution, declaring it to be the pleasure of the board that said plaintiff should not act in the capacity of superintendent of schools during the year for which plaintiff had contracted, said resolution revoking and annulling any pretended contract with the plaintiff, and relieving plaintiff from the assumption or performance of any duties as such superintendent. By agreement, the case was tried before the court without a jury, evidence was introduced and on the 9th day of March, 1914, the court rendered judgment, filing a journal entry thereof, showing findings both of law and of fact, and the conclusion of the court thereon. The judgment of the court was that the plaintiff take nothing, and that the defendant recover costs of the action from the plaintiff. The plaintiff duly filed a motion for new trial, which motion was, by the court, overruled and exceptions allowed, and the plaintiff brings error to this court.

The plaintiff makes numerous assignments of error, all of which merely raises the question as to whether or not, under the law in this case, the evidence sustains the judgment.

The entering into of the contract in question and the various acts of the board of education in this case all happened prior to chapter 219 of the Sess. Laws of 1913 coming into effect—such chapter becoming operative January 1, 1914. Section 14, art. 6, of said chapter authorizes the board of education in cities by a three-fourths vote to elect a superintendent for not to exceed three years, but this case must be considered under the law in force prior to January 1, 1914.

The material facts in this case are practically undisputed, and the only thing left for the court is to apply the law to such facts, which may be summarized as follows: That the plaintiff held the position of superintendent of public schools of the city of Perry, during the school years of 1912-13. By resolution of the board of education prior to the first Monday in May, 1913, the plaintiff was re-elected as superintendent for the year beginning July 1, 1913, and ending June 30, 1914, with a salary of $1,500 per year, payable monthly, in the sum of $125 per month, and a contract was executed accordingly. That in pursuance of said contract and said resolution of the board, the plaintiff, on July 1, 1913, entered upon his duties as such superintendent, and discharged all duties incumbent upon him up to the time of the regular session of the board of education held on July 7, 1913, at which time the board met, the plaintiff being present, and the board at that time resolved. among other things, that in the opinion of the board it was necessary that the positions of superintendent and principal of the high school should be in one person, at a salary not to exceed $1,100 per year, and that, whereas the said board of education. as it existed prior to the last annual election and before the present board was organized, met and entered into a contract with Prof. A. C. Farley for his services as superintendent for the coming school year, and said contract was made and entered into before the assessment of the school district under the jurisdiction of said board had been completed, and before it was known what the revenues of said district would be, and whereas the said superintendent, as provided by the law, shall only continue to hold said office at the pleasure of the board, it is hereby declared the pleasure of this board that his services will not

be needed for the coming school year. The plaintiff had due notice of the action of the board at time same was taken, and the defendant demanded of the plaintiff the possession of the keys and the records of the school, but the same were refused. On the 17th day of September, 1913, an injunction was obtained in the county court against the plaintiff, enjoining him from assuming the duties of superintendent of said schools. The lower court also makes the further finding of fact:

"In this case as tried and under the evidence introduced, no question of bad faith or ulterior motive can be attributed to the acts of the old board, the new board, or the plaintiff."

It is provided in sec. 7755, Rev. Laws of 1910, which was in force at the time this cause of action arose, that:

"The board of education, at such time as it may deem expedient, shall elect a superintendent of schools, in no case a member of the board, whose duty it shall be to have a general supervision of the schools of the city, subject to the rules and regulations of the board, who shall hold his office during the pleasure of the board, and shall receive such compensation as that body may allow. * * * "

Considerable space is taken up by both the plaintiff and the defendant discussing the law and authority as to whether, under the provisions of the statute quoted, the superintendent of schools of a city in this state is an officer, or an employe. An office is a public charge or employment, but not every employment is an office. The duties of an officer are fixed by law, and an employment arising out of a contract, whereby the person employed acts under the direction or control of others, and which employment depends for its duration and extent upon the terms of such contract, is not an office.

It may be added that an oath of office is required in this state, and that, while an officer may be appointed by constituted authority, yet in the discharge of his duties he knows no guide but the established law, and cannot be lawfully directed by others in the conduct of his office. In Stave v. Spaulding, 102 Iowa, 639, 72 N. W. 288, the court says with reference to the subject:

"When such appointment is provided for or required by law, which fixes their powers and duties, and they are required to take an oath and to give bonds, they are usually considered public officers; but where a deputy is appointed, merely at the will and pleasure of his principal, to serve some purpose of the latter, he is not a public officer, but a mere servant or agent. * * * So a 'position the duties of which are undefined, and which can be changed at the will of the superior, * * * is not an office, but a mere employment, and the incumbent is not an officer, but a mere employe.' "

From Olmstead v. Mayor, 42 N. Y. Super. Ct. 481, we quote:

A person "who receives no certificate of appointment, takes no oath of office, has no term or tenure of office, discharges no duties, and exercises no powers depending directly on the authority of law, but simply performs such duties as are required of him by the persons employing him, and whose responsibility is limited to them, is not an officer and does not hold an office, * * * although the persons so employing him are public officers, and his employment is in and about a public work or business."

We could multiply authorities, but it is not necessary. The mere expression in the statute that the superintendent "shall hold his office during the pleasure of the board" does not constitute the superintendent an officer, as that term is applied to public officers. It is not disputed that if the plaintiff is a public officer he could, under the statute, be removed at the pleasure of the appointing power. This proposition as to public officers under such a law is well established. Having held that plaintiff is an employe, and not an officer, we will next consider the authority of the old board to employ him and, if duly employed, whether or not he can be removed at the will of the board.

The board of education is a body corporate, and a change in the personnel of the membership does not affect the entity of its corporate existence. Where there is nothing in the statute limiting the authority of outgoing boards, it is held generally that they may make such a contract, subject, however, to statutory provisions, which, of necessity, must be implied as one of the conditions in every contract made.

The finding of the trial court that there is no question of bad faith or ulterior motive involved adds cogency to the proposition that the old board had authority to make this contract. 35 Cyc. 1079, School Dist. v. Ward, 40 Okla. 97, 136 Pac. 588; Reubelt v. School Town of Noblesville, 106 Ind. 478, 7 N. E. 206; Caldwell v. School Dist. (C. C.) 55 Fed. 372; Tappan v. School Dist., 44 Mich. 500, 7 N. W. 73; Cleveland v. Amy, 88 Mich. 374, 50 N. W. 293; Farrell v. School Dist., 98 Mich. 43, 56 N. W. 1053; Gillis v. Space, 63 Barb. (N. Y.) 177; Wait v. Ray, 67 N. Y. 36.

If the outgoing school board had authority to thus employ the superintendent, it would necessarily follow, in the absence of some provision in the statute to the contrary,

that the succeeding board could not discharge the plaintiff arbitrarily without being liable for damages in an action brought by the plaintiff to recover salary for the time for which he was employed. The writer of this opinion at first blush was inclined to hold to the view that such action on the part of the board would be a breach of contract which would give the plaintiff a right of action for unearned salary, but, after full consideration and an investigation of the authorities under statutes which provide for the removal of teachers at the pleasure, or during the pleasure, of boards, we are forced to arrive at the opposite conclusion.

It is contended by plaintiff in error that the board, once having expressed its pleasure by entering into a contract for the coming year, cannot change that contract and discharge the superintendent during the period of the contract without cause, notwithstanding the statutes provide that the superintendent shall hold his office during the pleasure of the board. We are not called upon to say what the law ought to be, but pronounce what the law is. It unquestionably was in the legislative mind when such law was passed that the board should have the .discretion to discharge the superintendent without cause when it appeared to the board to the best interests of the schools to do so. It does not appear that there was any bad faith on the part of the board, but, whether or not the board acted in bad faith, the authorities hold that, under such statutes, this question cannot be inquired into by the courts, and that the members of the board are the sole and exclusive judges as to the expediency of such action of the board. In Jones v. Nebr. City, 1 Neb. 176, the court says:

"The right of the defendants to employ a teacher is given by an act of the Legislature, passed at a session thereof had in 1866, which is referred to in plaintiff's petition. That act, among other things, empowers the board of education 'to contract with and employ all the teachers in the several schools therein' (in the city), 'and at their pleasure to remove them.' What was the occasion or reason for closing the schools and dismissing the teachers employed we are not to inquire. It is enough that the discretion and power is vested with the board of education. Contracting with public officers, the plaintiff is presumed to know the extent of their authority and the special powers given to them. This law, authorizing the employment of teachers, entered into and formed part of the contract. To say that the plaintiff could only be discharged for good cause is to declare this provision of the act unimportant; that it confers no greater or other right than that which exists outside of it. It is scarcely necessary to refer to the propriety and im-

portance of the provision under consideration. With a board of education rests a high responsibility. The qualifications for a successful teacher are various. The considerations which might move a board of education, who are presumed to act for the best interests of the community they represent, in the exchange of teachers, may be good and proper, and still not sufficient in law. To act in such cases upon the hazard of being indorsed by the verdict of a jury would be very embarrassing."

With reference to the arbitrary removal of. a teacher under such a statute, the case of Gillan v. Board of Regents of Normal Schools, 88 Wis. 7, 58 N. W. 1042, 24 L. R. A. 336, is a well-considered case. The appellant Gillan, was employed from the 1st day of September, 1891, to the 24th day of June, 1892, for the sum of $2,000 per year, payable in monthly installments, as a teacher in a normal school of the state, and was to be given $50 a week and all traveling expenses as conductor of institutes. The statutes of Wisconsin provided with reference to employment of teachers in state normal schools:

"The said board shall have the government and control of all the normal schools and shall have power * * * to appoint a principal and assistants, and such other teachers and officers, and to employ such persons as may be required for each of said schools; to fix the salary of each person so appointed or employed, and to prescribe their several duties." Rev. St. 1878, sec. 404.

The law further gave such board the authority—

"to remove at pleasure any principal, assistant or other officer or person, from any office or employment in connection with any such school." Subdivision 2.

On .the 16th day of March, 1892, the board caused formal notice to be given to Prof. Gillan that his services would be terminated at the end of 30 days thereafter, causing his term of service to cease on the 18th day of April, 1892. Gillan brought suit, alleging breach of the contract and damages. The court rendered judgment for the plaintiff for his services up to the date of expiration of his employment as terminated by the notice given by the board, and dismissed the action as to any salary or compensation subsequent to said date. The action of the court was predicated upon the right of the board to remove the plaintiff at pleasure under the statute. In this case the court said:

"This power of summary removal of a teacher, vested in the board by statute, * * * cannot be inquired into, or questioned, by the courts" (citing following authorities: Atty.

Gen. v. Brown, 1 Wis. 513; State v. Watertown, 9 Wis. 254; State v. McGary, 21 Wis. 496; State v. Kuehn, 34 Wis. 229; Reg. v. Darlington School, 6 Q. B. 682; Re Hennen, 38 U. S. [13 Pet.] 230, 10 L. Ed. 138; State v. Hawkins, 44 Ohio St. 98, 5 N. E. 228).

The court further says:

"This statute that gives the board the power of removal of all teachers at pleasure becomes a part of every contract the board makes with a teacher for his employment in a normal school. This is an old and incontestable principle of the law of contracts" (citing Bishop, Cont. 439, and cases there cited; Head v. Curators, Univ. of Mo., 86 U. S. [19 Wall.] 530, 22 L. Ed. 160).

We quote further from the opinion supra:

"The Board of Regents could make no by-law or contract by which this power could be bargained away, limited, or restricted" (citing Lauenstein v. Fond du Lac, 28 Wis. 336; Beach, Pub. Corp. pars. 268, 269, 471; Dill, Mun. Corp. pars. 96, 97; Brimmer v. Boston, 102 Mass. 19; Bolyston Market Asso. v. Boston, 113 Mass. 528; Reg. v. Darlington School, 6 Q. B. 682).

This decision also holds that the discretionary power lodged in the board by statute is not only effective to remove a teacher, but to terminate his wages.

As far back as we can trace, the rule under such power granted to a board has been the same. In the case of Regina v. Darlingtion School, 6 Q. B. 682, it appears that letters patent gave the governors of Darlington School, established by charter under Queen Elizabeth, power to remove a schoolmaster according to their sound discretion. The governors had made a by-law by which any teacher hired under the charter was to be heard in his defense. The question of the validity of the by-law, being presented to the courts, Lord Denham speaking for the court said:

"The discretionary power given by the letters patent was final to the validity of the by-laws. * * * The governors having undertaken to govern the school in the manner required by the charter, they are bound to remove a master whom, according to their sound discretion, they think unfit for the place. The power of the governors to remove justifies their doing so. And it is not to be restricted in any way by any opinion we may have of the reasons on which they might have been induced to exert it."

It must follow that the defendant board in this case had the authority to relieve the plaintiff of the duties of superintendent of the school of the city of Perry, and that his compensation terminated at the time he had notice of the action of said board. Gillan v. Board of Regents of Normal Schools, 88 Wis. 7, 58 N. W. 1042, 24 L. R. A. 336.

The plaintiff was present when the action of the board was taken on the 7th day of July, 1913, and had notice of what the board did on that date. A further question necessary for us to determine is: Was the plaintiff entitled to any compensation under the contract and the facts in this case, and, if so, in what sum? We have held that the contract was valid, and it is not disputed that the defendant entered upon his employment, doing all that his duties required, up to the time of the action of the board on the 7th day of July, 1913. The evidence shows that he attempted to discharge said duties up to the time the injunction was granted on the 17th day of September, 1913. He would only be entitled to compensation, however, beginning the 1st day of July, 1913, the date of the beginning of his duties, and up to and including the 7th day of July, 1913, the date he had notice of the board's action. Under the contract he was to receive $125 per month. By allowing 30 days to the month and pay for each day, he was to receive $4.16 2-3 per day. He would therefore be entitled to recover from the school board as of date July 7, 1913, the sum of $29.16.

The lower court holding that the plaintiff was entitled to nothing, and that the defendant should recover costs from the plaintiff, it follows that the lower court should be reversed.

The judgment of the county court of Noble county should be reversed, and this cause remanded to the lower court, with instructions to enter judgment for the plaintiff and against the defendant in the sum of $29.16, together with interest at 6 per cent. per annum from July 7, 1913, and all costs in this court and in the lower court.

By the Court: It is so ordered.