This will acknowledge receipt of your request for an official opinion of the Attorney General, wherein you submit the following question: ". . . whether Section 60 O.S. 178.8 [60-178.8] of Title 60 is unconstitutional as it relates to Section 11 of Article 10 of the Constitution of the State of Oklahoma?" 60 O.S. 178.8 [60-178.8] (1979) provides: "178.8. — A conflict of interest shall be deemed to exist in any contractual relationship in which a trustee of a public trust, or any for-profit firm or corporation in which such trustee or any member of his or her immediate family is an officer, partner, principal stockholder, shall directly or indirectly buy or sell goods or services to, or otherwise contract with such trust. Upon a showing thereof, such trustee shall be subject to removal and such contract shall be deemed unenforceable as against such trust unless the records of such trust shall reflect that such trustee fully and publicly disclosed all such interest or interests, and unless such contractual relationship shall have been secured by competitive bidding following a public invitation to bid. "The following types of transactions are exempt from the aforementioned provisions of this section: "1. The making of any loan or advance of any funds or, or in purchase of any obligation issued by such public trust, in connection with the performance of any of its authorized purposes; "2. Any legal advertising required by law or indenture or determined necessary by the trustees of such public trust; "3. The performance by any bank, trust company dr similar entity or any services as a depository, indenture trustee, paying agent or registrar of or for such Public Trust; or "4. The sale of any public utility services to such public trust, in which the price of said services is regulated by law. "It shall be the duty of each public trust to compile a list of all conflicts of interest for which its trustees have made disclosure. It shall also be the duty of each trust to compile a list of all dealings between its trustees and the trust which involve the exempted transactions listed above. Such lists shall be compiled semiannually for periods ending June 30 and December 31 of each year. Such lists shall be compiled on forms prescribed by the Oklahoma Tax Commission and shall be matters of public record. Copies of such lists shall be filed with the Secretary of State by September 1 and March 1 of each year." The first sentence of Section 60 O.S. 178.8 [60-178.8], which prohibits public trusts from entering into contractual relationships with their trustees, clearly is consistent with Okla. Const., Article X, Section 11 which is a general prohibition against "conflicts of interest" arising from self-dealing by public officers. Article X, Section 11 provides: "The receiving, directly or indirectly, by any officer of the State, or of any county, city, or town, or member or officer of the Legislature, of any interest, profit, or perquisites, arising from the use or loan of public funds in his hands, or moneys to be raised through his agency for State, city, town, district or county purposes, shall be deemed a felony. Said offense shall be punished as may be prescribed by law, a part of which punishment shall be disqualification to hold office." The receiving of any interest, directly or indirectly, from the use of funds officially held by an officer of the State, a county, city, town or member of the Legislature is prohibited by this language. It is not necessary that the officer actually realize an economic or financial profit from the use of such funds, so long as he is "interested" in the use thereof. Miller v. City of Martinez, Cal., 82 P.2d 519 (1938) contains appropriate language: "If his the officer's interest in the contract is such as would tend in any degree to influence him in making the contract, then the instrument is void because contrary to public policy, the policy of the law being that a public officer in the discharge of his duties as such should be absolutely free of any influence other than that which may directly grow out of the obligations that he owes the public at large." Youngblood v. Consolidated School Dist. No. 3, Payne Co., 104 Okl. 235, 230 P. 910
(1924), held: "A contract is unlawful which is (1) contrary to an express provision of law; (2) contrary to the policy of expressed law, thought not expressly prohibited. * * * The plaintiff being a member of the defendant district board, was in duty bound to look after and protect the interest of said district, and he could not legally put himself in a position where his personal interests were in conflict with the interest of the district of which he was an officer." It is a fundamental premise of the public policy of this State, embodied in Article X, Section 11 that public officers must discharge their duties absolutely free of any personal interest of their own. Speaking to a statute somewhat similar to Art. 10, 11, the United States Supreme Court said in U.S. v. Mississippi Valley Generating Co., 364 U.S. 520,81 S.Ct. 294, 5 L.Ed.2d 268 (1961): "The moral principle upon which the statute is based has its foundation in the Biblical admonition that no man may serve two masters, Matt. 6:24, a maxim which is especially pertinent if one of the masters happens to be economic self-interest." Schaefer v. Berinstein, Cal., 295 P.2d 113 (1956), addressed the general purpose behind constitutional, statutory and common law prohibitions on conflicts of interest arising from public office holding: "The public officer's interest need not be a financial one; nor is it necessary to show actual fraud, dishonesty, or loss to invalidate the transaction. The purpose of the statute is to remove all indirect influence of an interested officer as well as to discourage deliberate dishonesty. . . . It is not the character of the contract itself, but the manner in which it is created that renders it violative of sound public policy." Emphasis Added. It is the policy of Article X, Section 11 that public officers be officially interested only in the expenditure of public funds under their control, and that they divest themselves of any personal interest in such transactions. Since we are called upon to construe legislation, which in part implements the policy set forth in Article X, Section 11, our initial inquiry is into whether Art. 10, 11 is self-executing. However, before proceeding to that point, we observe: "Whether a provision of the Constitution be self-executing or not be self-executing, supplemental legislation facilitating the carrying into effect of the rights secured, and safeguarding the rights against abuses, may be desirable; but such legislation must be in harmony with the spirit of the Constitution and must not curtail the rights reserved or exceed the limitations specified." In re Initiative Petition No. 281, State Question No. 441, Okl., 434 P.2d 941 (1967). In Kiowa Co. Excise Bd. v. St. Louis San Francisco Ry. Co., Okl.,301 P.2d 677 (1956), it was held: "The Legislature has no power to abridge or extend a provision of the Constitution when the same is self-executing, by so-called construction or otherwise." The presumption is that constitutional provisions are self-executing. Appeal of Crescent Precision Products, Inc., Okl., 516 P.2d 275 (1973); 16 Am. Jur. 2d "Constitutional Law", 96. Appeal of Crescent Precision Products, Inc., supra, also held: "A constitutional provision is self-executing when it can be given effect without the aid of legislation and there is nothing to indicate that legislation is contemplated to render it operative, and when there is a manifest intention that should go into immediate effect * * *." Article X, Section 11 is a prohibitory constitutional provision directed against public officials acquiring adverse interests in matters arising from public office-holding. Ex Parte Cain, 20 Okl. 125, 93 P. 974
(1908), in holding that the "Prohibition" article of the Constitution was self-executing, observed: "The doctrine is well settled that, as a rule, negative or prohibitory clauses in a constitution are self-executing. (Citations omitted). * * * The want of a penalty, however, is a circumstance, which should be given great weight in determining as to whether or not the same is self-executing, though it is not conclusive. The proper rule is that prohibitive and restrictive provisions are self-executing when they can be enforced by the courts independent of statutory enactments." Article X, Section 11 declares a violation felonious and directs that the offense "shall be punished as may be prescribed by law, a part of which shall include disqualification from office." The need for legislation declaring the punishment for the crime does not change the ultimate character of Article X, Section 11 from a prohibitory constitutional provision, spelling out the precise conduct prohibited. Article X, Section 11 does declare the "penalty" in the sense that a violation is declared a felony, and the punishment must include disqualification to hold office. It is the opinion of the Attorney General, Article X, Section 11 is self-executing. In passing, we observe that 21 O.S. 341 [21-341] (1971) sets forth the punishment for a violation of Article X, Section 11. Persons charged under said statute may also be charged and convicted of violating Article X, Section 11. State v. West, 14 Okl. Cr. 405, 171 P. 1127
(1918). Since Article X, Section 11 is self-executing, the Legislature's authority to legislate upon the same subject, i.e., adverse or conflicting interests of public officials, is limited to supplemental legislation designed to make Art. 10, 11 more effective. State v. Eeith,179 Okl. 563, 66 P.2d 1059 (1937) held: "Though a constitutional provision may be self-executing, yet legislation may be desirable for the better protection of the right secured, and to provide a more specific and convenient remedy for carrying out such provision. The only inhibition is that the rights and remedies conferred shall not materially interfere with, abridge or extend the rights conferred by the Constitution." Self-executing constitutional provisions may be supplemented by appropriate laws designed to make them more effective, but such laws must stay within the bounds reserved by the Constitution, not exceeding its limitations. State v. Hejduk, 94 Okl. Cr. 178, 232 P.2d 664 (1951). It is with these principles in mind that we must address your question. The principle issue presented is whether those portions of 60 O.S. 178.8 [60-178.8], which purport to exempt certain activities from the conflict of interest provisions of 178.8, are in conflict with Art. 10, 11. Art. 10, 11, as we have said, is self-executing. The Legislature's authority to legislate upon the same subject, i.e., adverse or conflicting interests of public officials, is limited to. supplemental legislation furthering the purposes of Article X, Section 11. Insofar as 60 O.S. 178.8 [60-178.8] contains provisions which purport to make lawful conduct by public officials, which otherwise would be felonious under Article X, Section 11 they must be found unconstitutional. The Legislature is not free to create statutory exemptions to Article X, Section 11. The threshold question is whether trustees of a public trust are officers to which Article X, Section 11 applies. 60 O.S. 179 [60-179] (1971) provides: "The trustee, or trustees, under such an instrument or will shall be an agency of the State and the regularly constituted beneficiary for the performance of the functions for which the trust shall have been organized. * * *" (Emphasis added) This statute has been construed to set a public trust apart as a "legal entity separate and apart from the state and the political subdivisions of the state and as such . . . an agency of the State and the regularly constituted authority * * * for the performance of the function for which the trust shall have been created". State v. Garrison, Okl., 348 P.2d 859
(1960). Oklahoma County Utility Authority v. Corp. Commission, Okl. 478 P.2d 352 (1970), construed 60 O.S. 179 [60-179] as investing a public trust, engaged in water distribution as as public utility, with the status of an agency of the state. The court held that in the absence of specific legislation subjecting the trust to the Corporation Commission's regulatory jurisdiction, such trust could not be regulated by the Corporation Commission. The Court held: "The result to be reached from the Commission's advocacy is that the Legislature created 'an agency of the state' (the trustees) and gave that agent the authority to perform the functions for which the trust was created (state) agency under the control of another state agency, the Corporation Commission, We do not believe the Legislature so intended." See Southeastern Oklahoma Development and Gas Authority v. Corporation Commission, Okl. 606 P.2d 574, 576 (1980). Reading Garrison and Oklahoma County Utility Authority together, a Public Trust is an agency of the state with the same legal status as any other agency of the state. That the beneficiary of such trust is municipality or county makes the trust no less an agency of the state, a county and various municipalities were the beneficiaries of the trust in Oklahoma County Utility Authority. Trusts organized under the statutes in question (60 O.S. 176 [60-176] (1976) et seq.) are: "Created to issue obligations and to provide funds for the furtherance and accomplishment of any authorized and proper public function or purpose of the state or any county or municipality * * *". 60 O.S. 176 [60-176] (1979). It is an essential element of creation of a public office that the officer be invested with "a portion of the sovereign power." Guthrie Daily Leader v. Cameron, 3 Okl. 677,41 P. 635, 637 (1895). Certainly, officers of trusts organized for the purpose of furtherance and accomplishment of public functions and public purposes have been invested with a portion of the sovereign power. The requirement that an officer give a bond for the faithful performance of his duties and take an oath of office similarly has been found to be an essential element of public office. Guthrie Daily Leader v. Cameron, supra. 60 O.S. Supp. 1979, 178, [60-178] requires trustees of public trusts to furnish bond and take the oath of public office: "Every person hereafter becoming a trustee of a public trust first shall take the oath of office required of an elected public officer and every officer and employee who handles funds of a public trust shall furnish a good and sufficient fidelity bond * * *." Moreover, under 60 O.S. 178 [60-178](d), meetings of the trustees of public trusts are declared to be open to the public, and the records of such trusts are declared to be public records open to public inspection. Under 60 O.S. 178 [60-178](b), where the State of Oklahoma is the named beneficiary, the trustees of a public trust are appointed by the Governor with the advice and consent of the Senate, for staggered terms of specified initial durations, and upon the fifth year, such terms becoming staggered five year terms. The presence of a definite tenure and the establishment of the position by force of law are factors which help establish a position as being a public office. Guthrie Daily Leader v. Cameron, supra. Farley v. Board of Education, 62 Okl. 181, 162 P. 797, 799
(191?). in distinguishing between an "employee" of the state and an "officer" of the state, held in pertinent part: ". . . an oath of office is required in this state, and that, while an officer may be appointed by constituted authority, yet in the discharge of his duties he knows no guide but the established law, and cannot lawfully be directed by others in the conduct of his office." Trustees of a public trust are required to take the oath of office, and they cannot lawfully be directed by others in the conduct of trust business. State v. Evans, Okl., 319 P.2d 112
(1957) deals with the provisions of 60 O.S. 394 [60-394] (1971), which creates by operation of law a trust in property given testamentarily or otherwise "to the State of Oklahoma and a county therein and a city or town within such county", naming the Attorney General, the County Treasurer and the presiding officer of the municipal governing board(s) as trustees. The statute, 394, contains language similar to 179 of the Public Trust Act: ". . . shall be co-trustees and the official representatives and agents of their respective governmental units for all property or moneys involved * * *." The Court construed this wording to cause the trustees to assume the character of public officers for the purposes of such trust: "Consideration of the wording of the quoted portion of the statute, supra, making the enumerated persons 'the official representatives and agents of their respective governmental units * * * most clearly discloses the legislative intention to constitute the statutory trustees public officers for the purposes set forth in the entire act." (Emphasis added) We are of the opinion that officers (trustees) of a trust created for the furtherance of public functions, pursuant to 60 O.S. 176 [60-176] (1979), et seq., are "public officers" of "an agency of the state." This is not dispositive, however, of whether Article X, Section 11 applies to such officers; for we must also determine whether funds which they handle or expend as trustees come within the sweep of Article X, Section 11. Article X, Section 11 uses disjunctive language: "* * * public funds in his hands, or moneys to be raised through his agency for State, city, town, district or county purposes." (Emphasis added) Clearly enough, funds raised by a public trust for the furtherance of public functions, having the state, a county, city or town as a beneficiary, are raised "through his (the trustee's) agency for State, city, town, district or county purposes." The use of disjunctive language in the quoted phrase of Article X, Section 11 suggests that the framers contemplated two categories of moneys — moneys which are unquestionably "public funds" and other moneys raised through the officer's agency. The meaning of a constitutional provision clear on its face must be accepted. Shaw v. Grumbine, 137 Okl. 95, 278 P. 311
(1929). The intent was to forbid an officer from acquiring any adverse interest in or profiting from the use of any funds officially in his custody. It is the opinion of the Attorney General that funds raised by or through a public trust organized under 60 O.S. 176 [60-176] (1979) et seq., are within the ambit of Article X, Section 11. This leads us to an examination of those provisions of 60 O.S. 178.8 [60-178.8] (1979), which purport to make lawful contractual relationships between public trusts and their trustees. There are four enumerated exemptions from the conflict of interest provisions of 178.8, which deal with particular types of contractual relationships. These will be dealt with separately, infra. There is one broad category of exemption for contractual relationships entered into by public trusts and their trustees, where there is open disclosure on the records of the trust of such conflict of interest, and where such contracts are awarded through competitive bidding after public advertisement for bids. It is this last category of "exempt" contractual relationships, which we shall take up first. We find no authority which would permit the Legislature to legalize constitutionally felonious contractual relationships through statutory requirements for disclosure and competitive bidding. Such a statute would have to be viewed "as an act in evasion of the terms of the Constitution", with respect to which Trapp v. Cook Construction Co., 24 Okl. 850, 105 P. 667 (1909) held: "* * *an act in evasion of the terms of the Constitution, as properly interpreted and understood, and frustrating its general and clearly expressed or necessarily implied purpose, is as clearly void as if in express terms forbidden." Article X, Section 11 can be understood only as an absolute and unqualified prohibition on public officers profiting directly or indirectly from the use of funds in their custody or acquiring an adverse interest in the use or handling of such funds. It is elementary that a statute cannot legalize constitutionally prohibited conduct. It is therefore the official opinion of the Attorney General that contractual relationships between public trusts and their trustees, where such trustees acquire an interest therein or otherwise profit directly or indirectly from payment of such contractual obligations to them from funds of the trust, would violate Okla. Const., Article X, Section 11 even though the statutorily required disclosure has been made and the contract has been procured through competitive bidding. Next, we address the first numbered exemption in the second rhetorical paragraph of 60 O.S. 178.8 [60-178.8]: "1. The making of any loan or advance of any funds to, or the purchase of any obligations issued by such public trust, in connection with the performance of any of its authorized purposes." But for this purported exemption, any contractual relationship between a trustee and the trust with respect to loans or advances of funds, or purchase of any obligations issued by the trust, would be a statutory conflict of interest under the first paragraph of 178.8. The first exemption in 60 O.S. 178.8 [60-178.8] deals with a trustee loaning or advancing funds to the trust or investing in obligations, such as bonds, issued by the trust. Thus a loan or advance of funds from a trustee to a trust would run afoul of Article X, Section 11 because the trustee would acquire a personal interest in funds "raised" by the trust. The same could be said of a trustee purchasing obligations of the trust, such as bonds. Moreover, a trustee could not lawfully be paid interest by the trust upon such loans, advances or obligations, because such interest would necessarily consist of funds raised through the trust and be paid to the trustee for his personal gain. Therefore, it is the official opinion of the Attorney General that the first exemption of 60 O.S. 178.8 [60-178.8] violates Article X, Section 11. The second exemption contained in 60 O.S. 178.8 [60-178.8] is: "2. Any legal advertising required by law or indenture or determined necessary by the trustees of such public trust;" This provision plainly conflicts with Article X, Section 11. Permitting an officer to use his agency's funds to pay himself for "legal advertising" expenses of his agency can rise no higher than "an act in evasion of the terms of the Constitution." Trapp v. Cook Const. Co., supra. Therefore, it is the official opinion of the Attorney General that this second exemption in 60 O.S. 178.8 [60-178.8] violates Article X, Section 11. The third exemption in 60 O.S. 178.8 [60-178.8] is: "3. The performance by any bank, trust company, or similar entity or any services as a depository, indenture trustee, paying agent or registrar of or for such public trust;" Again, a trustee may not lawfully realize, either directly or indirectly, any profit arising from the use or loan of funds of the trust. The activities described above denote factual situations in which a trustee having an interest in a bank, trust company or similar entity, would derive personal profit from the "use or loan of public funds in his hands" and moneys raised through the trust. Moreover, such trustee would have acquired an adverse personal interest in such funds, irrespective of the question of profit. It is the opinion of the Attorney General that this exemption in 60 O.S. 178.8 [60-178.8] also violates Article X, Section 11. The fourth exemption in 60 O.S. 178.8 [60-178.8] is: "4. The sale of any public utility services to such public trust, in which the price of said services is regulated by law." The purpose of this purported exemption is to allow trustees, who also happen to have interests in public utility companies, to procure utility services for the trust and to pay for such services with funds of the trust. That the price for such services is "regulated" by law does not divorce the trustee from his dual status, both as a purchaser and a seller of the same services for the trust. The point is that there are unavoidable areas of conflict which can arise when a trustee sets out to serve two masters, and the characterization of one of the masters as a regulated public utility only opens up the field of possible conflicts to a wider range of possibilities. Therefore, it is the official opinion of the Attorney General that: 1. Okla. Const., Article X, Section 11 is self-executing; 2. A trust, organized under 60 O.S. 176 [60-176] (1979), for furtherance of public functions, i.e., a "public trust," is an agency of the State of Oklahoma; 3. The trustees of such a public trust are public officers of an agency of the State of Oklahoma; 4. The trustees of such a public trust are subject to Okla. Const., Article X, Section 11; 5. Funds raised by or through such a public trust are subject to Okla. Const., Article X, Section 11; 6. 60 O.S. 178.8 [60-178.8] (1979) contravenes Okla. Const., Article X, Section 11 by purporting to make lawful, five categories of contractual relationships between such public trusts and their trustees, which are forbidden by said constitutional provision, to-wit: Contracts entered into after public notice, competitive bidding and disclosure; loans or advances of funds to, or purchase of obligations issued by such public trust; contracts for legal advertising; contracts for performance by banks, trust companies or similar entities as depositories, indenture trustees, paying agents or registrars for such trusts; and sales of public utility services where the price of said services is regulated by law. (Floyd D. Taylor) (Ed Note: What is a public trust ? — Conflict of Interest)