FILED
United States Court of Appeals
Tenth Circuit

August 15, 2011

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

DAWN BUNCH,

       Plaintiff-Appellant,

v.

INDEPENDENT SCHOOL DISTRICT
NO. I-050, OSAGE COUNTY, a/k/a
Prue Public Schools; RON
MEADOWS; GERALD JACKSON;
VALERIE TRASTER; SYLVIA
HENDRIX,

       Defendants-Appellees.

No. 10-5109
(D.C. No. 4:09-CV-00458-CVE-FHM)
(N.D. Okla.)

ORDER AND JUDGMENT[*]

Before **BRISCOE**, Chief Judge, **EBEL** and **O'BRIEN**, Circuit Judges.

Bringing suit under 42 U.S.C. § 1983, Dawn Bunch alleged defendants'

termination of her employment with the Prue, Oklahoma, public school district

(the District) violated her First and Fourteenth Amendment rights. She appeals

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

from a summary judgment rejecting her claims, in which the district court determined she (1) had no protected property interest in her employment, and (2) failed to show her speech was a motivating factor for the termination. We affirm.[1]

### *Background*

Defendants are the District and four individuals who were members of the Prue Board of Education (the Board) during the relevant times. Bunch was a full-time support employee who had served as the District's treasurer since the 2003-2004 school year.[2]

In June 2008, the Board voted to renew Bunch's support-employee contract for the 2008-2009 school year. She signed the contract, which included certain employment-security provisions, in early October. Soon thereafter, however, the Board became concerned about the District's financial situation and retained a school finance director from another district as a consultant to review its finances. In his written report dated November 20, 2008, the consultant summarized a November 18 meeting with Board members and the Board's attorney:

> It was suggested that a budget had not been presented to the board for approval and that certain expenditures have been allowed to go unpaid. It was further implied that the board had concerns . . . that

[1]    Our jurisdiction derives from 28 U.S.C. § 1291.

[2]    Starting in the 2007-2008 school year, Bunch also served as the activity fund treasurer under a separate extra-duty contract, also terminated on December 8, 2008. She makes no argument related to that contract termination.

-2-

the fund balance would be smaller at the end of the year. It was further suggested that IRS payments, TRS payments, and Health Insurance premiums for some employees had failed to be reported.

Aplee. Supp. App. at 195. The consultant's visit to the administrative office on November 20 indicated that, with regard to the cash balances, the treasurer had "failed to accurately enter the data for several years." *Id.* "I do not believe at this time any type of illegal activity has occurred, however, estimated revenue has not been entered for several years. . . . Basically, all the treasurer did was receipt revenue with no accountability to budgeted allocations." *Id.* Further, during his visit, the consultant was made aware of a particular bill from the prior year that had gone unpaid, without any provision for reserves from the prior year's accounts. He wrote:

> It is apparent that the district is in need of staff appropriately trained to perform the duties of a treasurer, encumbrance clerk, payroll clerk, and activity custodian. . . . The issue of the staff and the related duties of data entry with the Prue staff indicate that changes should be made and appropriate training and supervision should be immediate.

*Id.* at 196.

At a meeting on November 25, 2008, the Board went into executive session to discuss the results of the investigation. During this session, the consultant expressed concerns about Bunch's performance. In his deposition, he later explained, "either she wasn't properly trained or she was not doing her job as required." *Id.* at 161. "I recommended that . . . the treasurer . . . she's been there

five years and she should know all this by now. It would be my recommendation that if she hasn't done the job in five years, she probably doesn't know how to do it now, that they find . . . another treasurer." *Id.* at 177. Defendant Board member Sylvia Hendrix recalled the consultant effectively saying "there was a mess out there" in the financial office. *Id.* at 214. She also remembered, "There were warrants, checks that were written that were in drawers, were never sent. Some items were paid doubly and triply. . . . Deposits were not being made properly. Taxes were not being paid properly. . . . [I]t didn't take [the consultant] very long to see that there were some definite problems out there . . . ." *Id.* at 214-15. After returning to open session, and without holding a due-process hearing, the Board terminated Bunch's employment as the District's treasurer.

Bunch's complaint claimed a property interest in her employment contract entitled her to a hearing before her employment was terminated. She also alleged the termination was in retaliation for her exercise of free speech rights because, earlier that fall, she had signed a state-court petition calling for a grand jury

investigation into the activities of Board members, and she had complained to friends and family about the Board. Bunch appeals[3] from the summary judgment.[4]

*Analysis*

"We review *de novo* a grant of summary judgment, applying the same standard that governs the district court." *Lauck v. Campbell Cnty.*, 627 F.3d 805, 809 (10th Cir. 2010). We view "the evidence in the light most favorable to the appellant." *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1229 (10th Cir. 2004). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## I.    Due Process

Contrary to the district court's conclusion Bunch contends she was entitled to a due-process hearing because she had a property interest in her employment.[5]

---

[3]    Other former employees have appealed from the decisions in other cases arising from events during Prue's 2008-2009 school year. *See Cypert v. Indep. Sch. Dist. No. I-050* (No. 10-5122); *James v. Indep. Sch. Dist. No. I-050* (No. 10-5124).

[4]    Bunch does not appeal from the dismissal of her state-law claims. The district court declined to exercise supplemental jurisdiction over them after rejecting the federal claims.

[5]    Before the district court, Bunch alleged both procedural and substantive due process violations. The trial court decided the allegations did not rise to the level of a substantive due process violation. Her brief mentions substantive due process only in passing. She has waived our review of that issue. *See Therrien v. Target Corp.*, 617 F.3d 1242, 1253 (10th Cir. 2010).

Okla. Stat. tit. 70, § 5-114 provides that a district treasurer serves at the pleasure of the Board of Education. Nevertheless, she claims a property right in her support-employee contract because it contains employment security provisions consistent with Okla. Stat. tit. 70, § 6-101.40, which allows full-time school-district support employees to be discharged only for cause. But the district court concluded the Board did not have the power to waive or supercede § 5-114 by entering into a contract purporting to give Bunch expanded rights. We agree.

More than ninety years ago, the Oklahoma Supreme Court held that a superintendent's employment contract could not supercede a statute providing he served at the pleasure of the board. *Farley v. Bd. of Educ.*, 162 P. 797, 799-801 (Okla. 1917); *see also Adams v. Indep. Sch. Dist. No. 43*, 964 P.2d 237, 238 (Okla. Civ. App. 1998) (holding a provision in a superintendent's contract was void as contrary to statute). Accordingly, for substantially the reasons discussed in the district court's order filed on August 20, 2010, Bunch had no property interest in her employment and was not entitled to a hearing before it was terminated.

## II. Free Speech

Bunch next quarrels with the district court's resolution of her retaliation claim, i.e., she was fired for exercising her First Amendment rights. We apply the five-step framework established by the Supreme Court in *Garcetti v. Ceballos*, 547 U.S. 410 (2006), and *Pickering v. Board of Education*, 391 U.S. 563 (1968):

-6-

(1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 745 (10th Cir. 2010) (quotation omitted). "The first three steps . . . are issues of law to be resolved by the district court, while the last two are ordinarily for the trier of fact." *Id.* (quotation omitted).

One basis for Bunch's First Amendment claim was her signature on the petition for a state-court grand jury investigation. Another was her comments critical of the Board made to friends and to her father, who was also her pastor. The district court concluded her allegations were insufficient to show protected speech. The only evidence she offered of a specific public statement was her signature on the petition. With regard to that, the court decided she satisfied the first three *Garcetti/Pickering* steps but failed to establish her signature on the petition was a motivating factor behind the termination.

Bunch tells us she "has produced sufficient evidence of statements and actions that she engaged in as [a] citizen[] relating to matters of public concern." Aplt. Br. at 24. But the record contains only general allegations failing to identify with particularity statements or actions sufficient to satisfy her burden to

-7-

identify the specific instances of speech underlying her claim. *See Craven v. Univ. of Colo. Hosp. Auth.*, 260 F.3d 1218, 1226 (10th Cir. 2001) (discussing inadequate identification of speech in appellate argument). With regard to her alleged comments to friends and family, she did not establish the occurrence and/or the content of the speech sufficiently for the court to even begin the *Garcetti*/*Pickering* analysis.

With respect to the grand jury petition, Bunch argues the fourth factor is ordinarily a jury question. She is generally correct, but summary judgment is appropriate when "there simply is no evidence in the record from which a trier of fact could reasonably conclude the [protected speech] was a motivating factor in [the plaintiff's] termination." *Rohrbough*, 596 F.3d at 750; *see also Maestas v. Segura*, 416 F.3d 1182, 1188-92 (10th Cir. 2005) (affirming a grant of summary judgment because plaintiffs failed to present sufficient evidence of causation).

Bunch relies on temporal evidence – her termination followed the filing of the petition by only two months. For purposes of this decision, we assume a two-month gap between protected activity and adverse conduct may establish a causal connection. *See Annett v. Univ. of Kan.*, 371 F.3d 1233, 1239-40 (10th Cir. 2004) (holding a period of up to two to three months demonstrated causation for the purposes of establishing a prima facie case); *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (assuming a period of approximately nine weeks was sufficient to establish a prima facie case of retaliation); *but see*

-8-

*Meiners*, 359 F.3d at 1231 (stating a gap of between nine weeks and three months is "probably too far apart . . . to establish causation by temporal proximity alone").

Even assuming a two-month period would be sufficient to establish the causal link, she failed to show any Board member was aware of her signature on the petition (one among more than 1,000). Because the record contains a copy of the petition, but not the signatures, it is impossible to determine whether Bunch's signature is legible or illegible, obvious or obscured. Moreover, each of the individual defendants denied knowing that Bunch had signed it. And she admitted to never speaking to any Board member about the petition or making any other public statements critical of the Board. "[T]he proximity between a specific . . . activity and the alleged retaliatory act is meaningless unless those who caused the alleged retaliatory act to occur are shown to have been aware of the specific activity." *Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d 1177, 1184 (10th Cir. 2002); *see also Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008) ("[A plaintiff] must first come forward with evidence from which a reasonable factfinder could conclude that those who decided to fire him had knowledge of his protected activity."); *Maestas*, 416 F.3d at 1189 (coupling "*close* temporal proximity" with "[a]n employer's knowledge of the protected speech").

Finally, "evidence of intervening events tend[s] to undermine any inference of retaliatory motive and weaken the causal link." *Maestas*, 416 F.3d at 1189 (citation omitted). In this case, as the district court recognized, the financial investigation and the consultant's resulting recommendation to terminate Bunch's employment were such events.

AFFIRMED.

Entered for the Court

Terrence L. O'Brien
Circuit Judge